Argued April 5, reversed April 25, 1916.

# DE WAR v. FIRST NAT. BANK.

(156 Pac. 1038.)

**Estoppel—Of Depositor.**

1. Where the president of a bank made an unauthorized loan of the funds of a depositor, and the bank examiner wrote the depositor, asking her to sign and return the inclosed release of liability to the bank, if she had authorized the president to withdraw her funds, the depositor's failure to reply to such letter raised no estoppel against her relative to her claim against the bank.

**Banks and Banking—Action for Deposits—Evidence—Materiality.**

2. In a depositor's action against her bank to recover funds, which the bank claimed she had authorized its president to lend for her, which he did, evidence of two witnesses that the depositor had had conversations with them in which she expressed a wish to dispose of the note representing the loan, and said she was willing to discount it, was admissible as tending to show ratification of the bank president's action.

From Douglas: JAMES W. HAMILTON, Judge.

In Banc.   Statement by MR. JUSTICE BENSON.

This is an action by Marie De War against the First National Bank of Roseburg, for the recovery of money. The pleadings so far as they are of interest in the discussion are as follows:

Complaint:

"That for many years prior to November 26, 1909, the plaintiff was a depositor of said bank, and from time to time deposited funds therein, and on November 26, 1909, plaintiff had on deposit in said First National Bank of Roseburg, Oregon, the sum of $3,611.40, which money she had deposited in said bank to her own account and for her own use and benefit; that since said date defendant has paid to plaintiff the sum of $611.40, and no more, leaving a balance due from said defendant to plaintiff of $3,000, no part of which has been paid, although payment thereof has been duly de-

manded by the plaintiff from the defendant prior to the commencement of this action.''

Answer:

''For a first further and separate answer and defense to plaintiff's complaint the defendant alleges: That during the time the plaintiff was a customer of the defendant and on or about the twenty-sixth day of November, 1909, T. R. Sheridan, at the special instance and request of the plaintiff, loaned the sum of $3,000 for the plaintiff to A. M. Kelsay, taking the note of said Kelsay therefor; that thereafter the defendant, at the special instance and request of the plaintiff, delivered said note to the plaintiff, and the plaintiff accepted and still retains the same; that the said sum of $3,000 was withdrawn from the defendant bank by the said T. R. Sheridan at the request and as the agent of plaintiff and loaned as aforesaid.

''For a second further and separate and affirmative answer and defense the defendant alleges: That on or about the seventeenth day of June, 1911, the defendant bank consolidated with the Douglas National Bank of Roseburg, Oregon, and transferred to said Douglas National Bank all of the deposits and the goodwill and business interests of said defendant; that on or about the twentieth day of June, 1911, R. W. Goodhart, national bank examiner, for and in behalf of said bank, addressed to the plaintiff a letter informing her that the said sum of $3,000 on deposit to her credit with the defendant bank had been withdrawn from said bank by said T. R. Sheridan, and that the said Sheridan claimed to have had authority to withdraw the same and to loan said funds to the said A. M. Kelsay; that said letter of said R. W. Goodhart to the plaintiff was substantially in words and figures as follows, to wit:

''  'Roseburg, Oregon, June 20, 1911.
''  'Mrs. W. T. De War.
''  'Dear Madam: The records of this bank show at a recent examination that certain charges had been made in your account by President Sheridan. In other words, part of your deposit had been withdrawn

and loaned by him. Mr. Sheridan states that you authorized him to withdraw these funds and invest them for you. If this is so, kindly sign and return in the inclosed envelope. Mr. Sheridan informs me that he has withdrawn the following sum, which he loaned to the parties mentioned below: $3,000.00 loaned to A. M. Kelsay.

<blockquote>
" 'Yours respectfully,<br>
" 'R. W. GOODHART,<br>
" 'National Bank Examiner.'
</blockquote>

" 'I hereby certify that any sums withdrawn by T. R. Sheridan from my balance on deposit with the First National Bank of Roseburg, Oregon, were duly authorized by me, and the First National Bank is relieved from all liability relative to the same.

——————.'

"That said letter was deposited in the postoffice at Roseburg, with the postage fully prepaid, and mailed to the plaintiff at her then address, Gardiner, Oregon; that the plaintiff never replied to said letter, but thereafter demanded the note given to said T. R. Sheridan by said A. M. Kelsay in evidence of said loan for the plaintiff, and has ever since retained and still does retain said note; that on the date said letter was so addressed to the plaintiff by said Goodhart the said T. R. Sheridan was the owner and holder of a large amount of property within the State of Oregon, a large amount of which was unencumbered; that if the plaintiff had responded to said letter, as she in duty bound ought, and had repudiated or denied the authority of the said Sheridan to make said loan for her, the defendant could have and would have secured itself against loss by reason of the loan so made by the said Sheridan for the plaintiff without her authority; that defendant believed that said Sheridan had authority to make said loan, and relied upon the silence and refusal of the plaintiff to answer said letter, and the delivery of said note to the plaintiff at her request, as conclusive evidence of the authority of said Sheridan to make said loan for the plaintiff, and therefore took no steps to protect itself against loss on account of the loan having been made by said Sheridan for the

plaintiff without her authority; that since the date of said letter the property belonging to said Sheridan has been attached by other creditors, and the said Sheridan has been adjudicated an involuntary bankrupt, and if the defendant should be compelled to pay said sum to the plaintiff now it would be almost, if not entirely, a total loss to the defendant; that by reason of the facts herein set out, and of the silence and refusal of the plaintiff to answer said letter, and her long delay in making any demand or bringing to the defendant knowledge or notice of her claim upon the defendant for said sum, the plaintiff ought to be estopped from now demanding said sum and from prosecuting this action for said sum thereof; that the plaintiff never demanded said sum from the defendant, or in any wise notified the defendant that she claimed the defendant to be indebted to her in any amount whatever, until a few days prior to the commencement of this action, to wit, on or about the —— day of November, 1914.''

Reply:

''Comes now plaintiff, and for reply to the new matter contained in the first further and separate answer and defense in said answer admits that the said sum of $3,000 was withdrawn from the defendant bank by T. R. Sheridan, as its president, and alleges that said Sheridan was at all times referred to in this action the president of said defendant bank and exercising actual control over its affairs; and plaintiff denies each and every other allegation contained in said first further and separate answer and defense. And for reply to the new matter contained in the second further and separate and affirmative answer and defense contained in said answer, plaintiff denies any knowledge or information thereof sufficient to form a belief as to whether or not on or about the seventeenth day of June, 1911, or at any time, the defendant bank consolidated with the Douglas National Bank of Roseburg, Oregon, or transferred to said Douglas National Bank all or any of the deposits or goodwill or business interests of said defendant; admits that on or about June 20, 1911, R. W. Goodhart, national bank exam-

iner, addressed to plaintiff a letter similar in tenor and effect to the letter set out in said answer, but denies that said Goodhart, in addressing said letter to plaintiff, was acting for or in behalf of the defendant bank, and plaintiff admits that she never replied to said letter; admits that some of the property belonging to said Sheridan has been attached by creditors, and admits that said Sheridan has been adjudicated an involuntary bankrupt; admits that plaintiff demanded from the defendant the sum sued for herein a few days prior to the commencement of this action, to wit, on or about the ———— day of November, 1914; denies each and every other allegation contained in said second further and separate and affirmative answer and defense.''

A trial was had, wherein, after both parties had rested, the trial court directed a verdict for plaintiff, which being returned, a judgment was entered in accordance therewith, from which defendant appeals.

REVERSED.

For appellant there was a brief with oral arguments by *Mr. Oliver P. Coshow* and *Mr. George G. Bingham.*

For respondent there was a brief and an oral argument by *Mr. Benjamin L. Eddy.*

MR. JUSTICE BENSON delivered the opinion of the court.

1, 2. The evidence submitted upon the trial discloses that either on November 26, 1909, or a short time prior thereto, the plaintiff, having $3,611.40 on deposit in defendant bank, of which T. R. Sheridan was president, had a conversation with him in the bank wherein she expressed a willingness to lend a portion of her money, not exceeding $3,000, if good security were had. There is a conflict between her testimony and that of Sheridan as to who was to pass upon the

sufficiency of the security.   She says that she never authorized him to make any loan without consulting her, and that she told him she would not make any loan without first consulting her husband.   Sheridan says she told him to lend the money upon good security, using his own judgment in the matter.   In any event, on November 26th, without consulting her, or receiving from her any check or other written order for the money, he proceeded to ''lend'' the same in the following manner: He was associated as a partner with A. M. Kelsay in the sheep-raising business in Harney County.   The partnership business was all conducted in the name of Kelsay, who had an account with the defendant bank.   This account had been long overdrawn in a sum exceeding $3,000.   Sheridan had advanced more than his just proportion of the moneys used in the sheep business and was much disturbed about Kelsay's overdraft.   He therefore made a journey to Harney County for the purpose of obtaining a satisfactory adjustment of the matter.   Kelsay then authorized him to negotiate a loan and to sign his name in securing the money.   Based upon this statement of facts, he proceeded to make a demand note for $3,000 payable to plaintiff, and signed it, ''A. M. Kelsay, T. R. S.''   Her account was then charged with that amount of money checked out, and Kelsay's account was credited with the same, whereupon, to use the language of witness Sheridan, ''he owed less than he did before.''   He also testified that Kelsay never saw the note, and the record is silent as to his ever having any knowledge of the transaction whatever. It appears that the venture in sheep was a disastrous failure, and that Kelsay some time thereafter removed to Imperial Valley, in California.

There is no merit in defendant's plea in estoppel, for the letter written by Goodhart, even if it could

be used in favor of the bank, a question not necessary to decide, is expressly worded in such a manner as to obviate any necessity of a reply, unless she could truthfully sign the certificate inclosed therewith. If this were all of the record, we should affirm the judgment; but the defendant offered evidence tending to prove a ratification by plaintiff of Sheridan's wrongful acts. She had testified upon cross-examination that the note had for a time been in her possession, and defendant offered to prove by two witnesses that she had had conversations with them in which she expressed a wish to dispose of the note and said that she was willing to discount it. This testimony was excluded, and this ruling is assigned as error. It is true that the defendant would have been required to go further, and show that acts tending to prove ratification were made with full knowledge of all the facts and circumstances surrounding the transaction; but its offered testimony was a step in that direction, and the ruling of the court, sustaining an objection thereto and forbidding its submission to the jury, was error, and the judgment must be reversed and the cause remanded for a new trial.        REVERSED.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE EAKIN absent.