Argued April 11, reversed and remanded April 30, rehearing denied June 4, 1918.

## HAINES *v.* FIRST NAT. BANK OF ROSEBURG.

(172 Pac. 505.)

**Evidence—Letters and Circulars.**

1. A depositor suing a bank for an alleged balance may not introduce a printed circular mailed to him, announcing defendant's consolidation with the D. bank, or letter on letter-head of the D. bank signed by its president, making such announcement and stating continuance in the business of defendant's former president; it not being shown that D.'s president was agent of or authorized to speak for defendant, or that the circular was mailed by its authority.

**Trial—Instructions—Conformity to Evidence.**

2. An instruction framed on a theory of facts of which there is no evidence is properly refused.

**Principal and Agent—Creation of Relation.**

3. Merely because a national bank cannot act as broker for loaning for a depositor, money which it has on deposit, arrangement by him with its president that it should do so does not make the president as an individual his agent.

**Principal and Agent—Authority to Loan.**

4. Authority to agent to loan money does not authorize him to borrow the money for himself.

[As to general rules respecting authority of agent, see note in 16 Am. St. Rep. 493.]

**Principal and Agent—Ratification—Knowledge.**

5. Ratification of an agent's act, in exceeding his authority to loan by borrowing the money for himself, cannot be imputed to the prin-

cipal merely because he was told that a loan was made, without being informed of the facts.

Account Stated—Impeachment.

6.   One to whom a statement of account was rendered, though having made no objection, may impeach it for fraudulent concealment of facts.

Banks and Banking—Withdrawal of Deposit—Evidence.

7.   Statement by a depositor in a bank that he had loaned his money to its president is competent evidence for the bank that he had withdrawn his money from the bank.

Banks and Banking—Liability of Bank—Acts of President as Individual.

8.   The president of a bank may as an individual borrow money for his private account from a depositor in the bank; dealing with one who is president of a bank not necessarily making his acts those of the bank.

Limitation of Actions—Action by Bank Depositor.

9.   The statute of limitations does not begin to run against claim of a depositor in a bank till his demand has been refused.

From Douglas: JAMES W. HAMILTON, Judge.

Department 1.

The plaintiff grounds his cause of action on the statement, in substance, that on April 6, 1908, he had on deposit in the defendant bank $2,221.71, since which time the defendant has paid to him $221.71, and no more, leaving a balance of $2,000 which has not been paid by the defendant, although the plaintiff has demanded the same.

Among other things, the answer contains this language:

"Denies that the plaintiff withdrew from said bank on the 6th day of April, 1908, and since that date, the sum of $221.71 only, but alleges the fact to be that the plaintiff on said 6th day of April, 1908, withdrew from said bank the sum of $2,000 and thereafter continued as a depositor and patron of said bank, withdrawing and depositing different sums of money; that all of the sums of money so deposited by the plaintiff have been withdrawn by him."

This allegation was traversed by the reply.

For further answer the defendant avers in substance that about April 6, 1908, at the special instance and request of the plaintiff, T. R. Sheridan, then president of the defendant bank, loaned to R. S. Sheridan for the plaintiff $2,000, and for the purpose of effecting the loan withdrew that amount of money from the plaintiff's deposit with the defendant bank, that being the identical sum demanded herein.

Again, in substance, the defendant answers to the effect that the sum of $2,000 of the plaintiff's money was withdrawn from his account by T. R. Sheridan and loaned for the plaintiff; that on or about April 6, 1908, the bank rendered and stated an account between the plaintiff and the defendant which showed the withdrawal of the $2,000 in question, with a balance remaining due the plaintiff in the sum of $221.71, and that the plaintiff never made any objection to, but always acquiesced in, the correctness of that account. Finally, the transaction is again rehearsed in substantially the same language, including a statement of the account showing the withdrawal of $2,000 on April 6, 1908, and that the plaintiff received the account so stated, retained the same, acquiesced in and approved the same, and that more than six years have elapsed since the withdrawal of the sum of $2,000, on account of all of which the defendant urges that the demand of the plaintiff has been barred by the statute of limitations.

For affirmative matter in the reply the plaintiff alleges, in effect, that T. R. Sheridan, as president of the bank, represented to him that his funds could be loaned by the bank on interest; that while plaintiff did not authorize either the bank or its president to loan any

of his money, it did render him the statement of account showing that $2,000 was charged against the plaintiff which Sheridan, acting on behalf of the defendant, as its president and actual manager, represented to plaintiff was a loan on his account upon which he would draw interest, and that his money was subject to withdrawal from the bank by him at any time; that on belief of the plaintiff that the bank was solvent, and having full confidence in the integrity of Sheridan, he made no objections to the account; that on the contrary, as the event proved, the bank never did loan the money, but that Sheridan, its president, took that amount for his own use without plaintiff's authority and caused the same to be charged to the account of the latter, using his position as president of the bank for that purpose.

The essence of the new matter in the reply is that the representations of the defendant's president to the effect that the bank had loaned the money were designed to deceive and did deceive the plaintiff causing him apparently to acquiesce in the account stated; but that in fact the statements of the defendant's president and manager were false and were uttered for the purpose of concealing his personal appropriation of the plaintiff's funds and so the latter, relying upon the same, was defrauded.   A jury trial resulted in a verdict and judgment for the plaintiff and the defendant appeals.                   REVERSED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. Oliver P. Coshow.*

For respondent there was a brief and an oral argument by *Mr. B. L. Eddy.*

BURNETT, J.—The record contains many assignments of error, some of which we find it unnecessary to consider. Having testified, admitting that he had received the statement of account mentioned and that he had not made objection to it, the plaintiff introduced in evidence a printed circular of date June 17, 1911, announcing the consolidation of the defendant bank with the Douglas National Bank and the purpose to carry on banking business under the name of and in the rooms of the Douglas National Bank. The plaintiff testified that he had received this through the mail, but nothing appeared in evidence about who sent it or by whose authority it was issued. He also introduced a letter dated August 9, 1911, on the letter-head of the Douglas National Bank and signed by J. H. Booth, president. It is addressed to the plaintiff and aside from mere formal expressions reads thus:

"We have forwarded check books of this bank to you as requested in your favor of the 7th and thank you for your expressions of continuing your business with the consolidated bank as formerly done with the First National. We appreciate it and we assure you that we shall always be ready to care for your wants as called upon and shall extend just the same courteous treatment as given in times past by the other bank which we have now absorbed. Mr. Sheridan continues right along actively with us as he did in the other bank but he wants some of us younger men to take the burden of the work from him a large share of which the writer will undertake."

1. The defendant objected to the introduction of both these documents on the ground that they were incompetent, immaterial, irrelevant and in no way affecting the issues involved in this action, which objection was overruled and the instruments were read in evidence over the exception of the defendant. There was no tes-

timony tending to show that the defendant sanctioned
either of the papers in question.   So far as the allusion
to Sheridan's continuing in the banking business with
the Douglas National Bank is concerned, it was pure
hearsay and not admissible.   In order to charge the
defendant with any of the statements contained in
those documents or the deductions to be drawn there-
from, it would be necessary to show that they were
authorized by the defendant.   In principle it is like the
Goodhart letter alluded to in nearly all the cases
against the defendant, cited at the close of this opinion.
Goodhart was a national bank examiner and in audit-
ing the books and accounts of the defendant in his
official capacity he found entries where the president
of the bank had drawn memorandum checks against the
accounts of depositors diminishing their deposits by
so much, even as in the present case.   In such instances
he addressed a letter to the depositor stating that such
memorandum checks of the president had been hon-
ored and the amount charged to the account of the de-
positor and called upon the latter to state whether he
authorized or approved the action thus narrated.   In
some of those cases the depositor answered avowing
the action of Sheridan in so doing and attempts were
made to predicate estoppels upon the correspondence;
but, as held in *Doerstler* v. *First National Bank of
Roseburg*, 82 Or. 92 (161 Pac. 386), the bank examiner
was in no sense the agent or authorized to speak for
the defendant and, hence, no estoppel could be grounded
upon his letter and the answer thereto.   So, here, it is
not shown that the president of the Douglas National
Bank was the agent of or had authority to speak for
the defendant.   Neither does it appear that by its
authority the printed circular was mailed to the plain-
tiff; and hence by a parity of reasoning, as employed

with reference to the Goodhart letters, it was error to receive in evidence the letter and circular here involved.

2. The defendant requested a variety of instructions too numerous and lengthy to be quoted at large in this opinion. One element apparent in them is that they were framed upon the theory that Sheridan withdrew the money and loaned it for the plaintiff; but although this is alleged there is nothing in evidence even tending to show that T. R. Sheridan loaned the money to anybody. In this state of the testimony an instruction involving that feature was properly refused.

3. Again, another element of the denied instructions is to the effect that Sheridan acted as agent for the plaintiff; but it leaves out of view the necessary ingredient that his agency must have been with the plaintiff's previous consent or subsequent ratification with knowledge of all the facts pertaining to his action. Of course, as stated in the Doerstler case, if, indeed, the plaintiff appointed Sheridan individually to be his agent to draw the money out of the bank for any purpose whatsoever and, acting under such authority Sheridan had taken out the money, the bank would not be responsible for the same. The argument of the defendant in the present juncture is that the plaintiff must be charged with a knowledge of the law that no national bank can act as broker or agent for another person in loaning money which it has on deposit, and that being so legally informed, he must be held to have dealt with Sheridan as an individual. It does not follow, however, that because Sheridan could not as a matter of law commit his bank to an agency for the plaintiff for any purpose of the kind mentioned, negotiations to that end would constitute an appointment of Sheridan the individual to be such agent.

Under the circumstances no legitimate result in favor of the bank could grow out of an attempted illegal transaction such as would result if the bank undertook to act as the broker for the purpose of effecting a loan for anyone. However contrary to the law it would be to arrange for the bank to loan money for the plaintiff the scheme cannot be pruned of its illegality without his consent so as to make Sheridan, the individual, an agent for him.

4. As stated, there is no evidence in the record that Sheridan loaned any of the money. On the contrary the construction most favorable to the defendant is that he borrowed it. Indeed, there is the testimony of two witnesses who declare that the plaintiff told them that he had loaned his money to Sheridan. Then, too, even if he was appointed by the plaintiff to be the agent of the latter to loan the money it would not be authority to Sheridan to borrow the money for himself. The reason is that an agent cannot assume a position where he is at once acting for himself and adversely to his principal. His duty to his principal in such a case would require him to act as lender and he could not at the same time act as borrower, for the two relations are inconsistent with each other. True it is, that if the principal was aware of all the facts it would be competent for him to ratify the transaction. But the evidence is all one way that the plaintiff had no knowledge that Sheridan himself had taken the money for his own purposes until about the time he commenced this action.

5, 6. Among the refused instructions was one containing this language:

"If you find from the evidence that the defendant bank rendered to the plaintiff a statement of account

and if you find that said statement credited the plaintiff's account with a certain sum of money as interest on said loan, and if you find that the plaintiff with knowledge of said loan retained said interest, then I instruct you that the plaintiff cannot now repudiate the said loan and at the same time retain the benefit of said loan, and if you find that plaintiff has retained such interest, I instruct you that the plaintiff's conduct would constitute a ratification of said loan and plaintiff cannot recover in such action.''

This instruction omits the necessary element of knowledge of all the facts upon which the account was predicated. On the theory that Sheridan, the individual, was indeed the agent of the plaintiff, the mere statement that a loan had been made, when, in fact, unknown to the plaintiff Sheridan had borrowed the money, would not be sufficient to impute ratification to the plaintiff. He had a right to presume that Sheridan had indeed loaned the money to somebody instead of borrowing it himself and he would have a right to impeach the stated account by reason of the fraud of Sheridan in stealthily exceeding his authority as agent.

7. The defendant excepted to an instruction given by the court in which the following language was used:

''There is no evidence here before you which would permit you to find under the issues and the evidence in this case that the money was loaned either to T. R. Sheridan or R. S. Sheridan, and the defendant cannot be excused from the payment of the amount of the deposit of the plaintiff on account of a loan either to T. R. or R. S. Sheridan.''

As before pointed out, there was the testimony of two witnesses to the effect that the plaintiff had told them he had loaned his money to Sheridan. This was competent testimony in support of the averment in the answer that the plaintiff on April 6, 1908, with-

drew the sum of $2,000 from the bank and that all sums of money deposited by him had been withdrawn by him. If, in truth, he loaned the money to Sheridan, as these witnesses state, and which he denies indeed, the jury would be authorized to find that he had withdrawn it from the bank. He could not well loan that money to anyone without withdrawing it from his bank account.

8. Again, in an instruction the court stated this:

"As to the transaction between the plaintiff and the defendant bank, I instruct you that the acts of the president of the defendant bank are to be deemed the acts of the bank itself."

This is a mandatory sanction of the plaintiff's theory notwithstanding the testimony about his admissions that he had loaned the money to Sheridan. There is no law against Sheridan, the individual, borrowing money from the plaintiff with his consent and for the private account of the former, and there is nothing to prevent the plaintiff from loaning Sheridan the money without necessarily making the transaction an act of the bank. It does not unavoidably follow as a matter of law that dealing with a man who happens to be the president of a bank makes his acts those of the bank. There are two sides to this question, dependent upon whether the plaintiff was dealing with the bank through its president, as he now claims, or whether he dealt with him as an individual and loaned the money to him in his private capacity as the two witnesses testify he related to them.

9. The court instructed the jury thus:

"If you find that the plaintiff has a claim against the defendant and that defendant bank gave plaintiff credit on account of any payment of interest, then six years would have to elapse from the said payment be-

fore plaintiff's claim can be barred by the statute of limitations, even though the statute of limitations would begin to run against the plaintiff prior to his demanding payment of claim he had against the defendant.''

It is not clear what a credit of interest on the deposit would have to do with tolling the statute of limitations under conditions disclosed by the record. It does not begin to operate against one who deposits money in a bank until his demand for the same has been refused. It is common knowledge that individuals leave money on deposit in banks for long periods of time beyond the six years prescribed in which an action for money may be instituted; yet no one would pretend that the statute of limitations had barred a claim for a deposit unless a demand for the same had been refused and the period had afterwards expired. The instruction in that respect is harmless for it does not disturb the principle that a demand must be shown before the statute begins to run.

In brief, it was error to admit in evidence the circular and the Booth letter because it was not shown that they were authorized by the defendant. Neither would they excuse the plaintiff from his duty either to avow or reject the account provided he had knowledge of the facts upon which it was based. It was error to state to the jury as a matter of law that the transactions between Sheridan and the plaintiff were necessarily binding upon the bank, because it omits the possibility that the plaintiff dealt with Sheridan as an individual, of which there was some evidence. It is elementary that where there is testimony supporting the theory of either party it is incumbent upon the court to leave the question to the jury under proper instructions and a charge which ignores such a situ-

ation and directs attention only to the theory of one party under such circumstances is erroneous.

The principal questions involved in this appeal have been settled in the cases of *Chapman* v. *First Nat. Bank,* 72 Or. 492 (143 Pac. 630, L. R. A. 1917F, 300); *Byron* v. *First Nat. Bank,* 75 Or. 296 (146 Pac. 516); *De War* v. *First Nat. Bank,* 80 Or. 260 (156 Pac. 1038); *Wells* v. *First Nat. Bank,* 80 Or. 329 (157 Pac. 145); *Carlon* v. *First Nat. Bank,* 80 Or. 539 (157 Pac. 809); *Verrell* v. *First Nat. Bank,* 80 Or. 550 (157 Pac. 813).

The conclusion is that the judgment must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.    REHEARING DENIED.

McBRIDE, C. J., BENSON and HARRIS, JJ., concur.