## BANK OF LAWRENCEVILLE *v.* ROCKMORE & COMPANY.

1. Where a suit was brought against a bank to recover a balance on a deposit account, the plaintiff being named as R. & Co., a firm alleged to be composed of R. and his wife, it was competent to plead and prove that the wife was not a member of the alleged firm, that in fact there was no firm, but the title R. & Co. was simply a name under which R. deposited his own funds in the bank, and that he was indebted to the bank on a matured debt an amount greater than the amount due on the deposit account.

2. Against a suit to recover a balance due on a general-deposit account the bank may set off a matured debt due to it by the depositor.

3. A bank pass-book is evidence, but not conclusive evidence, of the amount due to a depositor.

4. A request to charge which treated the pass-book as conclusive was properly refused.

5. The portion of the answer relating to the subject of the fraud of one of the plaintiffs in pretending that his wife was a member of the firm with himself, and which was stricken by the court, failed to allege that the bank was an innocent party, and was properly stricken.

Submitted June 18,—Decided November 16, 1907.

Complaint. Before Judge Reagan. Gwinnett superior court. January 5, 1907.

Rockmore & Company, a firm alleged to be composed of M. L. Rockmore and Mrs. Effie Rockmore, brought suit against the Bank of Lawrenceville, and alleged as follows: Defendant is indebted to the plaintiffs in the sum of $750 besides interest. On January 21, 1904, plaintiffs, in the name of Rockmore & Company, became customers of the bank in depositing the sum of $130 to their credit and from time to time up to and including March 2, 1904, they deposited the total sum of $7,387.72 to their credit. At divers times they drew checks in their firm name aggregating about $6,637.82, leaving about $750 which they now have to their credit in bank. At different times they have demanded this balance by giving checks against it, which the bank has refused to pay. A copy of one of the checks for the sum of $500, payable to the order of J. A. Perry, was attached. The plaintiffs have presented their pass-book showing the deposit to their credit with the bank, and requested that the book be balanced, which was refused.

The defendant denied indebtedness to the plaintiffs. It admitted that M. L. Rockmore for himself, but in the name of Rockmore & Company, opened an account with defendants, and, up to March 2, 1904, had deposited the amount stated "to the credit of said alleged firm of Rockmore & Company. It also admitted that there was a balance of $718.26 to the credit of an account in the name of Rockmore & Company, but alleged that M. L. Rockmore was indebted to the defendant on an account in excess of the apparent balance; and that $665.44 belonged to the defendant and was fraudulently deposited by M. L. Rockmore to the credit of said account of Rockmore & Company under the following state of facts: In the fall and winter of 1903 Rockmore was engaged in the business of buying cotton, and made an

arrangement with the defendant to get the money to carry on the business, under the terms of which the cotton was to be deposited in a certain warehouse, and warehouse receipts therefor were to be turned over to the defendant as security for the repayment of the sums thus advanced. Under this arrangement he was also to keep the cotton insured against loss or damage by fire, and the insurance policies were to be delivered to the defendant for its protection, and the insurance money was to be paid to it in case of loss. In the month of December, 1903, the warehouse and 147 bales of cotton stored in it, and which defendant had furnished Rockmore funds to buy, were totally destroyed by fire. Defendant had loaned Rockmore about $8,000 for the purpose mentioned, up to the time of the fire, and no part of it had been repaid. Among the insurance policies thus taken out on the cotton by Rockmore and indorsed by him and delivered to the defendant was one for $1,000 issued by the Continental Insurance Company. After the fire the defendant delivered this policy to Rockmore, who agreed to take it to the office of the local agent of the insurance company, receive the money and bring it back to the defendant. As the policy had been issued in the name of Rockmore, it was necessary for him to receipt for the money before payment would be made. The insurance agent paid Rockmore the amount of the money for the defendant, but instead of bringing it to the bank he fraudulently converted $334.56 of the amount to his own use by using it to take up a claim held against him by a third party, and placed the balance of $665 to the credit of Rockmore & Company on their account during the absence of the cashier of the defendant, who had delivered the policy to him for collection to be credited on the amount due by him to the bank, which amount is still due. It has refused to pay the balance thus standing in the name of Rockmore & Company on their checks, for the reasons above stated.

The jury found for the plaintiffs. Defendant moved for a new trial. It was refused, and defendant excepted.

*W. E. Simmons,* for plaintiff in error    *J. A. Perry,* contra.

LUMPKIN, J. Rockmore & Co., alleged to be a firm composed of Rockmore and his wife, sued the Bank of Lawrenceville for an alleged balance due them on a deposit account, and recovered a

verdict. A motion for a new trial was refused, and the defendant excepted.

1. Error was assigned because the court struck from the answer an allegation that there was no such firm at the time alleged in the petition as Rockmore & Company, "and that M. L. Rockmore is using said firm name for the sole purpose of defrauding and hindering this defendant from collecting just debts owing by him." It was assigned as error that the court, by striking this and another part of the answer and rejecting evidence, excluded the defendant from showing that there was really no such firm as Rockmore & Company, and that as a matter of fact the name was simply a designation of Rockmore as an individual. When a suit was brought in the name of Rockmore & Company against the bank, could it plead and prove the defense just indicated? If not, why not? The name "Rockmore & Company" imports prima facie the existence of a firm, but does not indicate who compose such firm. A deposit in the name of Rockmore & Wife would have been different. To do business as Self & Company is at best calculated to mislead; but it is possible for such designation of one's self to coexist with the honest conduct of business. It does not necessarily follow as matter of law that one who enlarges his business title, or who outgrows his individual name to the extent that he feels it necessary to add the word "and company" thereto, intends to commit or does commit a fraud on his creditors. Like the plural "we," employed by sovereigns and in editorial circles, it may be somewhat more impersonal than the singular, without being improper. Even the law has sometimes made use of fictions. John Doe is recognized as a respectable litigant, although in reality only a kind of nom de guerre. But neither John Doe nor "& Co." should be used to perpetrate a fraud on creditors of the real party. The addition "& Company" does not on its face define who constitute the company. It is susceptible of proof of who comprise it, or whether anybody does so. The jury may inquire into "& Company" and make the acquaintance of its component members through the medium of the evidence. On questions of fraud they may consider the addition of a name without a person for it to apply to, where this throws light upon the subject in hand. In so far as the answer merely alleged that there was no company, but that Rockmore & Company was identical with Rock-

more, it should not have been stricken; and evidence was admissible to sustain the allegation. See, on the general subject, 1 Bolles' Modern Law of Bkg. 482.

2. Another ground of the motion for a new trial was that the court refused a request to give the following in charge: "If the jury believe from the evidence that M. L. Rockmore, a member of the firm of Rockmore & Company, the plaintiffs in this case, agreed with W. M. Sasser, the cashier of the defendant bank, that the $665.44 arising from the insurance policy should not be checked out or paid to Rockmore & Company, but should go as a credit on the amount owing defendant from said M. L. Rockmore for money advanced to the latter, then the plaintiffs can not recover that deposit in this case." There was no error in refusing this request. If there was no such firm as Rockmore & Company and that name was merely a designation of Rockmore, then the deposit was his and could be applied by his agreement to his individual debt to the bank; or, without his consent, the bank could set off against it his matured debt. But the vice in the request to charge is that it treats the firm as an existing firm, "the plaintiffs in this case"—that is composed of Rockmore and his wife. If in fact the deposit belonged to a firm composed of two persons, one of them could not by agreement apply such firm assets to his individual debt without the consent of the other partner, or have the deposit account due to the firm set off as a credit upon his individual debt to the bank. *Harlow* v. *Rosser, Scurry & Co.*, 28 *Ga.* 219; *Eady* v. *Newton Coal & Lumber Co.*, 123 *Ga.* 557. And a like principle is applicable to an effort by a bank to apply assets of a firm to individual debts of one of its members. *Bank of LaGrange* v. *Cotter*, 101 *Ga.* 134. Whether, upon a settlement of accounts between partners, equity might apply the interest of a partner so agreeing to his indebtedness, would raise a different question.

3, 4. Complaint is made that the court refused a request to give in charge the following: "If a depositor in a bank is indebted thereto in an amount in excess of the balance shown to be due on his pass-book, it can refuse to pay a check on his account and retain whatever balance is shown to be due thereon, to protect itself from loss by reason of such indebtedness. In other words, the bank could legally set off such indebtedness against

the balance so due on account." This request is defective in that it treats the pass-book as being conclusive as to the state of the account. It is evidence, but not conclusive evidence. In this very case it was agreed that the pass-book did not actually show the state of the account. A bank has the right to set off against the amount of a general deposit belonging to a customer a matured claim due by the customer to it. *Georgia Seed Co.* v. *Talmadge & Co.*, 96 *Ga.* 254; 1 Morse, Banks and Banking (4th ed.), §§ 324, 334. It is not necessary to deal with the question of unmatured claims, or with deposits made by one in the name of another, but which have not ripened into complete gifts to the other for want of delivery, or as to which not title to the deposit or deposit account has passed to such other for want of notice. None of these matters are here involved. It may be also stated that Rockmore appears to have been insolvent, and the bank's claim was past due.

5. Error is further assigned because the court struck certain allegations of the answer, to the effect that Rockmore made the account with the bank in the name of Rockmore & Company, falsely pretending that his wife was a member of said pretended firm, for the purpose of defrauding, hindering, and delaying his creditors, and to prevent them from reaching the money by process of garnishment, and that as matter of fact there was not then or now any such firm as Rockmore & Company, composed of Rockmore and his wife. The brief of counsel for plaintiff in error insists on this point under the contention that the bank was entitled to prove that there was no such firm as Rockmore & Company, and that this was merely a designation of Rockmore. Considered as a plea of fraud perpetrated upon the bank, it was defective in that it did not show that the bank was an innocent party, but rather indicated the contrary. The statement that Rockmore made the account with it, pretending that his wife was a member of the firm, apparently means that he so stated to the bank. If he did state to the bank that his wife was a member of the firm, it could not well be a fraud on the bank that she afterwards claimed to be such. If there was a fraud, and the bank knew of it, and took part in it, then it can not claim to have been defrauded thereby. One can not have an action on account of an injury resulting from a fraud in which he himself takes part.

He can not participate in a fraud against himself and be relieved in equity from the consequences of his own wrong. *Peacock* v. *Terry,* 9 *Ga.* 137. We do not understand that by this portion of the answer the bank was seeking to raise a defense under the legal maxim that between those equally guilty of fraud the courts will grant no relief. The brief argues the case on the basis of the bank's being innocent and defrauded, not that it and Rockmore were equally guilty.

A depositor sometimes deposits in his own name or in a trade name employed by him in business (such as A. & Co.), or in his name as agent or trustee. If this is done bona fide, it does not constitute fraud as matter of law. It may be done in good faith for the purpose of keeping separate accounts, as where a man is conducting two kinds of business, or where he has trust funds and also individual funds. But if one colludes with a bank to cover up his funds by making a deposit in a fictitious name, and this is done to delay and defraud his creditors and to prevent them from discovering and subjecting to his debts the deposits so made, this would constitute a fraud. A bank is not generally required to investigate the causes which may lead to deposits in the name of a firm or of one as agent or trustee, or the like. But it can not properly collude with a depositor for the purpose of misleading creditors and covering up his funds under a fictitious name so as to prevent their being subjected to garnishment. But we do not understand that the bank is urging such a position as its defense; and we make no ruling on such theory.

The first ground of the amended motion complained of the striking of the sixth paragraph of the answer. This is not referred to in the brief of counsel for plaintiff in error, and is therefore not dealt with.

As the case will be returned for a new trial, we express no opinion upon the evidence; nor do we deem it necessary to discuss collateral questions touching the status, rights, and duties between banks and depositors, which are not made before us.

*Judgment reversed. All the Justices concur, except Holden, J., who did not preside.*