Argued January 19, submitted on reargument June 8, affirmed June 22, 1926.

## J. E. THOMPSON *v.* H. P. LARSEN.

### (247 Pac. 139.)

Payment—Delay of Over Five Years Before Suing on Alleged Contract for Work and Labor Performed, Raised No Presumption of Payment.

1. That plaintiff, suing on alleged contract for work and labor performed, did not bring action until over five years after cause of action accrued, raised no presumption of payment.

Payment—In Action on Contract for Work and Labor Performed, Court Held to have Properly Excluded, Under Pleadings, Evidence of Plaintiff's Needy Circumstances, Offered as Tending to Show That Claim had Been Paid (§ 799, subd. 4, Or. L.).

2. In action on alleged contract for work and labor performed, *held* that, in view of Section 799, subdivision 4, Or. L., and fact that principal issue was amount agreed to be paid for plaintiff's services, court did not err in excluding evidence that plaintiff, during period up to filing of suit, was in needy circumstances, offered as tending to show that claim had been paid.

Trial—Court's Remark That Plaintiff had Right to Wait Five Years Before Suing Held not Error.

3. In action to recover for services rendered five years before action was brought, defended on ground of payment and settlement, it was not error for the court, in excluding evidence of plaintiff's needy circumstances, to remark that he had a right to wait five years if he wanted to.

---

1. Presumption of payment from lapse of time, see note in 1 A. L. R. 779. See, also, 21 R. C. L. 128, 134.

2. See 21 R. C. L. 121.

Appeal and Error—In Action on Contract for Work and Labor Per-
    formed, Exclusion of Testimony That Plaintiff was in Needy
    Circumstances, if Error, Held not Reversible Error (Const.,
    Art. VII, § 3c).

4. In action on alleged contract for work and labor performed,
exclusion of testimony that plaintiff was in needy circumstances,
if error, *held* not reversible, in view of Constitution, Article VII,
Section 3c, where great weight of evidence was in plaintiff's favor,
and testimony, if admitted, would not likely have resulted in dif-
ferent verdict.

---

Appeal and Error, 4 C. J., p. 969, n. 56, p. 1173, n. 64.
Master and Servant, 39 C. J., p. 203, n. 27, p. 205, n. 45.
Payment, 30 Cyc., p. 1274, n. 20, p. 1284, n. 10, 11.

From Lane: G. F. SKIPWORTH, Judge.

In Banc.

This action was instituted by the plaintiff to collect
the sum of $464.84. The complaint alleges a contract
between the parties to the effect that the plaintiff
performed work and labor for the defendant at the
agreed price of $5.25 per day for 117½ days and that
only the sum of $152.06 had been paid on account
of said work and labor. The answer denies all the
allegations set forth in plaintiff's complaint and as
an affirmative defense alleges that there were only
four acres on the tract of land under the inclosure
and it produced wild hay only; that the plaintiff was
employed to keep outside cattle out of that inclosure;
that plaintiff had crab poison on one of his hands
and was unable to work and that he was employed by
defendant to keep the cattle out of that field during
defendant's absence in the east; that said inclosure
produced about four tons of hay; that the plaintiff did
nothing else except to help defendant haul some house-
hold goods and machinery about eighteen miles dis-
tant; that after the plaintiff quit work and early in

---

4. See 2 R. C. L. 253.

the fall of 1917, the plaintiff and defendant had a full settlement at which time the defendant paid to the plaintiff $182 as full compensation. The defendant's plea is one of payment and settlement. The reply denies the affirmative allegations of the answer. The only question raised on the appeal is on the court's refusal to permit the plaintiff while a witness in his own behalf to answer the following questions propounded on cross-examination:

Q. "You were needing money all the time, weren't you?

"This question is objected to as immaterial and the objection sustained. Counsel for defendant then states:

"We expect to show by the witness that he was hard up and needed money at the time.

"We want to save the record.

"Court: He had a right to wait five years if he wanted to. He was within the statute.

"Mr. Woodcock: I want to save the record.

"Court: All right.

"Woodcock: We expect to prove the witness was hard up, and needed the money on this contract, and did not ask for any.

"Court: The offer is denied."

An exception was taken and allowed.

The witness was permitted to answer the following questions also propounded on cross-examination:

"Q. You never have spoken to him for five years?"
Objection was made and overruled.

"A. Not until the fall of last year.

"Q. Just about the time you brought this case?

"A. In July I think it was.

"Q. And all that time you went along and did not ever ask him for it?

"A. Yes, sir. I did not ask him until last July for a settlement.

"Q. Now, isn't it a fact that you had a settlement when he paid you the last payment?

"A. No, sir. Never was a word about a settlement."

AFFIRMED.

For appellant there was a brief over the names of *Mr. A. C. Woodcock* and *Mr. L. Bilyeu*, with an oral argument by *Mr. E. O. Potter.*

For respondent there was a brief and oral argument by *Mr. H. E. Slattery.*

COSHOW, J.—The defendant relies on this appeal on this statement from 1 Wigmore on Evidence, 218, Section 159:

"The fact that a creditor during the period when he might have enforced his demand by suit, if he had one, was in indigent circumstances and needed the use of his means is a circumstance tending to fortify the presumption that the demand has been paid or otherwise satisfied, * * ." 21 R. C. L. §§ 135, 155.

*In re Keenan's Estate,* 73 Hun, 177, (25 N. Y. Supp. 877); *Bean* v. *Tonnele,* 94 N. Y. 381 (46 Am. Rep. 153); *Hamilton* v. *Hamilton,* 18 Pa. St. 20 (55 Am. Dec. 585); *Morrison* v. *Collins,* 127 Pa. 28 (17 Atl. 753, 14 Am. St. Rep. 827). In 4 Wigmore on Evidence, 3565, Section 2517, this rule is stated:

"The discharge of a claim by payment is often said to be presumed after a lapse of time depending on the circumstances of the particular case; the inference being based on the principle of Relevancy already examined (*ante,* § 159). But the multiplied statutes of limitation have reduced the occasion for invoking any other rule, and it is not frequent that

a real rule of presumption is intended to be laid down.''

21 R. C. L. 134, Section 152, lays down this rule:

''The length of time which is required to elapse before the presumption of payment will arise is different in different jurisdictions. As a general rule, however, twenty years, is the period adopted, though it is variously fixed at sixteen years, fifteen years, and sometimes ten years.''

Section 153 in same page reads:

''The presumption of payment never arises from lapse of time alone, short of the period fixed by law. In a given case, if there are no circumstances tending to aid the presumption of payment, and the presumption does not arise for want of the necessary time, it would be the duty of the court so to instruct the jury and withdraw it from their consideration. It is true, however, that time has always been regarded as an auxiliary to other facts and circumstances on questions of payment, possessing more or less importance as the period may have been longer or shorter, and it may in connection with other circumstances establish the fact of payment.''

The same authority in Section 151 reads:

''The courts have frequently said in discussion that the presumption applies only to debts not embraced by the statute of limitations, but there appears to be no good reason why a defendant may not avail himself of the presumption of payment, if it is applicable, although the action is brought on an obligation covered by a statute of limitations.''

1–3. In the instant case the plaintiff brought his action in a little more than five years after the cause of action accrued. No presumption of payment could arise on account of the lapse of time. If other circumstances had been proved, which was not done or attempted, it would have been proper for the defend-

ant to have shown that the plaintiff was in indigent circumstances and that the defendant was able to pay from which circumstances the jury might have inferred the debt had been satisfied. But the issue here is the amount of the debt. Plaintiff alleges a contract for a specific amount. The defendant does not plead or attempt to prove the reasonable value of the services, but denies the special contract to pay $5.25 per day and alleges he paid plaintiff $182 in full settlement. The plaintiff admits having received $152. The answer attempts to set out what work was required of the plaintiff, but the actual work done by the plaintiff under his contract with the defendant is immaterial in view of the fact that all of plaintiff's time was required and plaintiff's allegation and proof that he was to be paid an amount equal or in excess of what he had been earning catching and marketing crabs. The evidence that he had been earning $5.25 per day is not disputed. Plaintiff is supported in his testimony in regard to his earning power by his father and one of his sisters. They also support the testimony of the plaintiff to the effect that he was importuned by the defendant upon the express promise of the defendant that the latter would pay him as much or more than he could make fishing for crabs and that the plaintiff reluctantly consented to accept the defendant's offer.

It is not stated when the payments were made by the defendant to the plaintiff. There were at least three payments made but the particular dates they were made during the five years intervening between the time the account accrued and the institution of this action are not given. Upon cross-examination the plaintiff testified that the reason he had not asked the

plaintiff for money sooner was that the defendant was his brother-in-law and he thought he could get his money any time. Our statute prescribes, "That a person takes ordinary care of his own concerns." Or. L., § 799, subd. 4. The indulgence of a debtor by a creditor, especially when members of the same family, for a period of five years is not unusual. In our opinion it was not error for the court to sustain the objection. It certainly was not error for the court to state: "He had a right to wait five years if he wanted to. He was within the statute." The only effect the anticipated answer could have had lawfully was the inference deducible from the delay and the needy condition of plaintiff. His needy condition would not have been a defense. It might have been considered by the jury in weighing the credibility of the witness. In view of the principal issue in the instant case, which is the amount agreed to be paid for plaintiff's services, we believe the question and anticipated answer were both immaterial.

4. But if we concede that the ruling rejecting the proffered evidence was error, it does not necessarily follow that it was reversible error. The evidence is overwhelming that the plaintiff was earning an average of $5.25 per day; that he was earnestly urged by the defendant to go on to the land about twenty miles distant from his home for defendant's benefit; that while there he was deprived of the comforts of his home, camped in a barn and guarded the land from trespass of livestock belonging to other parties; that the defendant promised to pay him as much or more than he was earning crab fishing. The only denial made by the defendant is as to the amount the plaintiff was to receive for his services. Defendant does not set up any agreement in regard to that. He

made three separate payments and both he and his wife testified that the plaintiff said the last payment was more than he expected to receive. As explanatory of the nature of the evidence introduced by the plaintiff, we direct attention to the testimony of J. S. Thompson, father-in-law of the defendant Larsen and father of the plaintiff. Mr. J. S. Thompson testified on cross-examination as follows:

"Q. Now, you have taken quite an interest in this case, haven't you?

"A. Well, yes, of course I have * *

"Q. You are very much interested in seeing that this comes out all right?

"A. I am interested in all of the children as far as that is concerned.

"Q. Well, you are interested in this case, too.

"A. Well, this case, I am interested in it, but then it is not because it is John * * I am interested in Mr. Larsen and we have never had any trouble. Him and I have never had a word yet. He has always been good to me and I have been to him and if I thought Mr. Larsen was in the right, I would do all I could on his side just as I would on the other."

One of the sharply contested issues was in regard to the amount of the payments made by the defendant to the plaintiff. Plaintiff admits having received $152. The defendant alleges and testified that he had paid plaintiff $182. The jury found for the plaintiff on that item. In view of this result it is not at all likely that a different verdict would have been returned if plaintiff had answered the question propounded. After a careful reading of the evidence we believe that the great weight of the evidence is in favor of the plaintiff, and though we considered the ruling of the court on the only matter submitted on this appeal to be erroneous, we believe the judg-

ment should be affirmed under the authority of Article VII, Section 3-c, Constitution of Oregon.

The intrinsic value under ordinary conditions of plaintiff's services is not important. His services were sought by the defendant during the war when laborers were scarce and wages were high. Defendant was anxious to have a trustworthy person in actual possession of the land to protect defendant's interests therein. Defendant was negotiating for the purchase of the land and could not himself be there. It is therefore immaterial whether there were four acres inclosed or 1,000. The real issue submitted to the jury was whether or not the defendant promised to pay to the plaintiff the amount claimed by the defendant. The defendant does not pretend that he paid him more than $182. The question of presumption of payment really is not relevant because the controversy hinged on whether he should have paid him $616.88 or $182. There was no pretense on the part of defendant that he had paid more than $182. There is then no ground for invoking the presumption of payment.

The judgment is affirmed.    AFFIRMED.

BEAN, RAND and BELT, JJ., concur.

McBRIDE, C. J., concurs in result.

BURNETT, J., Dissenting.—The complaint in this action is as follows:

"The plaintiff, J. E. Thompson, as his cause of action against the defendant, H. P. Larsen, states that, prior to May 13, 1917, he was engaged in the business of fishing for crabs on Alsea bay, and that he was making more than the sum of $5.25 per day at said business; that at all times herein expressed, the

said defendant owned a ranch consisting of about 1100 acres of land located about 20 miles north of Florence, Oregon, on the Pacific Coast, that on or about May 1, 1917, the said defendant desired to employ this plaintiff to work upon, manage, and operate the said farm for him and promised this plaintiff that if he would quit his business of fishing for crabs and accept employment from the defendant in the management, working upon, and operating the said farm he would pay this plaintiff more money than he was making in said business in which he was then engaged; that this plaintiff accepted employment from the said defendant for said consideration and worked for the said defendant upon his said farm for said agreed consideration from the morning of May 13, 1917, up to noon on September 8, 1917; that the total time which this plaintiff devoted to the said defendant in working upon, managing, and operating the said farm was 117½ days; that the agreed consideration for the said services was more than the said sum of $5.25 per day, or a total of $616.88; that said defendant has paid this plaintiff the sum of $152.06 and not more to apply upon the consideration for the said services; and that there is now due from the defendant to the plaintiff for said services and entirely unpaid the sum of $464.88 with interest thereon at the rate of 6 per cent per annum from September 8, 1917."

The defense to this complaint is the general issue and new matter to the effect that the plaintiff did nothing but keep stock off of four acres of ground on the farm mentioned and that after the plaintiff quit work the parties had a full settlement by which it was agreed that there was due the plaintiff $182, which the defendant paid him. This in turn is denied by the reply. It will be observed that the action was commenced on November 4, 1922, more than five years after the cause of action accrued. The judg-

ment went for the plaintiff for the full amount demanded and the defendant appeals.

The complaint is subject to some criticism in that it does not allege that the defendant knew or was informed what the plaintiff was making in the business of catching crabs, so that there may be some doubt as to whether the minds of the parties met on the amount to be paid. The only question presented on the appeal arose in this way, on cross-examination of the plaintiff. He was asked:

"Q. * * Why did you wait so long to bring the case?

"A. Because he was a brother-in-law of mine, living there, and I thought I could get the money any time that I attempted to settle with him. .

"Q. You were needing money all the time weren't you?"

This question was objected to on the ground that it was immaterial. The court sustained the objection, whereupon the counsel for the defendant said:

"We expect to show by the witness that he was hard up, and needed money at the time."

The ruling of the court was, as stated:

"He had a right to wait five years if he wanted to, he was within the statute."

The ruling of the court thus made was excepted to by the defendant.

There is a species of evidence defined in Section 794, Or. L., thus:

"An inference is a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect."

It is said in Section 796:

"An inference must be founded,—

"1. On a fact legally proved; and

"2. On such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature."

Considering the ordinary desire of men to possess their own property and to collect what is due to them, it would be admissible to show that the plaintiff, at the time the debt accrued, was in need of the money from which fact the jury could infer that in pursuit of such desire, heightened possibly by actual need, he had collected it. Either party has a right to produce any evidence relevant to the issue and to furnish for the jury a foundation for a legitimate inference. As said in *Ayres* v. *Ayres,* 69 N. J. Eq. 343 (60 Atl. 422):

"One ground for a presumption of payment growing out of lapse of time is that a man is always ready to enjoy what is his own. Whatever will repel this will take away the presumption of payment, and for this purpose it has been held sufficient that the party was a near relation."

On this ground last stated the court refused to apply the rule in that case because the litigation was between a widow and the estate of her deceased husband. It must not be confused with the statute of limitations, for in that same case the court stated:

"That a presumption of the payment of a debt arises where more than 20 years have elapsed since its accrual is well settled, but it is equally true that this presumption may be rebutted by an explanation of the delay, or the production of proof sufficient to satisfy the court that the debt remains unpaid, and it 'does not act like a statutory limitation, but as a rule of evidence as well as a rule of public policy.' "

In *Young* v. *Doherty,* 183 Pa. 179 (38 Atl. 587), the Supreme Court of Pennsylvania approved an instruction of this kind:

"Sometimes, however, a presumption of payment arises in a less period than twenty years; as, for instance, if it were shown that the plaintiff were in needy circumstances, and that the defendant was abundantly able to pay, the inference would naturally arise from such circumstances that some demand or effort to collect the note would have been made at a much earlier period than within sixteen years, which is about the time that has elapsed since this suit was instituted."

The following extract is quoted with approval in the *Appeal of Lyons, In re Gilbraith's Estate,* 270 Pa. 288 (113 Atl. 361), citing from *Carpenter* v. *Hays,* 153 Pa. 435 (25 Atl. 1127):

"The presumption grows stronger as each period of payment goes by. In the nature of things it is less potent against a claim for two or three months' wages than for 2 or 3 years'. * * As said by our late brother Clark in *Gregory* v. *Com.,* 121 Pa. 611 (15 Atl. 452, 6 Am. St. Rep. 804), 'The presumption will gather strength with each succeeding year, and the evidence to overthrow it must, of course, be correspondingly increased.'"

According to the syllabus in *Hughes* v. *Hughes,* 54 Pa. St. 240,

"A shorter period than twenty years aided by circumstances which contribute to strengthen the presumption of payment of a bond, etc., from lapse of time may be submitted to a jury as grounds for the presumption of the fact of payment. * *

"To aid the presumption of payment from lapse of time, evidence of the needy circumstances of the obligee and of the easy and solvent circumstances of the obligor, would in most cases be competent."

In *Garnier* v. *Renner,* 51 Ind. 372, the defendant, a party to a note held by the plaintiff, and upon which the action was brought, offered to prove that the plaintiff came to him anxious to sell some stock in a corporation, saying that he needed the money, and persisted in that thought until the defendant purchased his stock at a discount. The court there said:

"Payment, like any other fact, may be proved by circumstantial, as well as direct evidence. In the absence of a statute of limitations, payment was presumed, in the absence of explanatory circumstances, after twenty years. But it might, and still may be inferred, by the jury or court trying the cause, from circumstances, coupled with the lapse of a shorter period. * *

"The circumstance sought to be proved by the defendant, and excluded by the court, was of such a nature as tended strongly to support the theory of the defendant, that the note had been paid."

In *Bean* v. *Tonnele,* 94 N. Y. 381 (46 Am. Rep. 153), it is said:

"The presumption of payment from a great lapse of time is founded upon the rational ground that a person naturally desires to possess and enjoy his own, and that an unexplained neglect to enforce an alleged right, for a long period, casts suspicion upon the existence of the right itself. This presumption may be fortified or rebutted by circumstances. The fact that a plaintiff during the period when he might have enforced his demand by suit, if he had one, was in indigent circumstances and needed the use of his means, is we think, a circumstance tending to fortify the presumption that the demand has been paid or otherwise satisfied."

See, also, *In re Keenan's Estate,* 73 Hun, 177 (25 N. Y. Supp. 877). The same rule of evidence is declared in *Daniel* v. *Whitfield,* 44 N. C. 294, *Strong* v.

*Slicer,* 35 Vt. 40, *Beckley* v. *Jarvis,* 55 Vt. 348, and *Stone* v. *Hupper,* 58 Vt. 409 (5 Atl. 387).

The testimony reported in the record is in some respects quite vague and contradictory as between the parties, making a close question of fact, so that each party should have the benefit of all the legitimate testimony he can produce. From the remark of the court in sustaining the objection to the testimony offered it seems that the learned trial judge confused the statute of limitations, which when properly pleaded is a bar, with the inferences to be drawn from the fact proved merely as a matter of evidence. The plaintiff's answer excusing his inaction on the ground of the relationship between the parties rather strengthened his position, and the defendant had a clear right to offset that by the pursuit of the further inquiry and show, if he could, that the plaintiff was in need of the money at the time. There was error as indicated.

BROWN, J., concurs in this dissenting opinion.