2008 UT App 9

**George B. HANDY, Trustee,
Plaintiff and Appellant,**

v.

**U.S. BANK, NATIONAL ASSOCIATION,
Defendant and Appellee.**

**No. 20060529–CA.**

Court of Appeals of Utah.

Jan. 10, 2008.

Karra J. Porter and Nathan D. Alder, Salt Lake City; and Preston L. Handy and Garrett S. Handy, Murray, for Appellant.

Michael W. Homer, Jesse C. Trentadue, and Kevin D. Swenson, Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and ORME.

## OPINION

ORME, Judge:

¶ 1 George B. Handy found a passbook in his "junk drawer." The passbook pertained to a savings account that, at least according to the entries in the passbook, had lain dormant for over thirty years. Handy now appeals the trial court's determination that he failed to prove he was entitled to the money reflected in the passbook. We reject some of the trial court's rationale but affirm its disposition.

## I.  BACKGROUND [1]

### A.  The Passbook Account

¶ 2 In October 2003, Handy, an eighty-four-year-old Ogden attorney, found a passbook in the junk drawer of his office credenza.[2] The passbook was in the name of "George B. Handy, Trustee." The passbook account was issued by the United States National Bank of Oregon (the Oregon Bank). The passbook showed that someone had made five deposits totaling $150,000 between July 24 and September 14, 1971, but did not indicate that any withdrawals had been made. There were no entries showing accrued interest. Until he stumbled upon the passbook, Handy did not know he possessed it. And despite his name being on the passbook and it being in his credenza in a drawer with his personal papers, he testified that this was "the first time that [he] ever saw this passbook." Handy could not remember

---

1. Given that the evidence was essentially undisputed, as noted by the trial court following the bench trial, in reciting the pertinent facts we have supplemented the formal factual findings with evidence in the record.

2. Handy testified that, over the years, he put old cards, letters, and clippings in the drawer that he might want to look at in the future.

how the passbook came to be in his junk drawer. It was "an absolute complete mystery to [him]." He further testified that normally he would have kept a document of such importance in a more "secure place." He did not initially know who opened the account; who made the deposits; who the beneficiary of the trust was; who wrote his name on the passbook; or who, if anyone besides him, was authorized to withdraw money from the passbook account. However, after thinking about the matter, he recalled that he represented a man named Richard Anderson about thirty-five years ago, with whom he traveled to Oregon to discuss some business matters with state officials. Handy further recalled Anderson's asking him if he could place money in a trust account in Handy's name, a request to which Handy consented. Not long thereafter, Anderson died in a plane crash.

¶ 3 Handy testified that he never made any of the deposits listed in the passbook account, never withdrew any money from the passbook account, and never authorized any withdrawals. He further testified that he never signed an affidavit of a lost passbook, never received any form of payment on the passbook account, and never received any correspondence regarding the passbook account. He never received any 1099 forms, any documents regarding the passbook account's accrued interest, or any documents notifying him that the account would be converted to a statement account. Handy also confirmed that he never saw a signature card on the account and did not know whose address the Oregon Bank had on file for the account. He also had no evidence that an express trust linked to the passbook account actually existed. Nonetheless, with the stated intention of returning the proceeds to

Anderson's estate or other rightful owner, Handy, as trustee, sought to collect the funds reflected in the passbook from the Oregon Bank.

¶ 4 Handy presented the passbook to the U.S. National Bank Association (the Bank), the Oregon Bank's successor,[3] seeking to withdraw the $150,000 plus accumulated interest.[4] The Bank acknowledged that the passbook was authentic and was a record that the deposits had been made into the passbook account. However, the Bank refused to give Handy the funds because its computerized records did not indicate the account still existed.[5] One of the Bank's vice presidents opined that the account must have been closed after the funds were withdrawn.

### B. Passbook Accounts and the Oregon Bank's Procedures

¶ 5 Passbook savings accounts were common until the latter part of the twentieth century. When a person opened a passbook account, the passbook was his or her record of the deposits to and withdrawals from the account. The Oregon Bank kept its own records of these transactions on microfilm—before it switched to computers—and retained signature cards, which indicated who owned the account. Two of the Bank's vice presidents testified at the hearing. They both indicated that the signature card represented a contract between the owner of the account and the Oregon Bank. Those listed on the signature card had legal title to the account and could deposit and withdraw funds from the account. The vice presidents also testified that usually the name or names on the signature card would appear on the corresponding passbook. However, at times—for instance, if many names appeared

---

3. In August of 1997, the Oregon Bank and the First Bank National Association merged. The resulting bank was named U.S. National Bank Association.

4. An expert testified that the present value of the account would have been somewhere between $535,914.59 and $832,134.38, if the $150,000 had not previously been withdrawn and interest had been compounded.

5. The Bank checked its open records, closed records, records regarding accounts that had es-

cheated, and microfilm records without success. The Bank presented testimony that after an account remains dormant for three years it begins the escheat process, which entails mailing letters over a period of six months to the account holder. Neither Oregon nor Utah had any records indicating the passbook account had escheated. The Bank also presented evidence that the system would not allow an account to close if there were any remaining funds in it, and that it only gets rid of records seven years after an account closes.

on the signature card—the owners of the account chose which name or names would appear on the passbook. In such situations, those named on the signature card were still owners of the account and could withdraw funds without a passbook if they provided identification proving that they had an ownership interest in the account, i.e., that their signature was on the signature card for the account. If a person did not have a passbook and his or her name was not on the signature card, he or she would not be able to withdraw funds from the account.

¶ 6 The passbook in question contained this statement: "For your protection, all withdrawals from this account require presentation of the passbook. Please notify us at once should you lose your passbook." However, the two vice presidents outlined a procedure by which account holders who forgot their passbooks could still withdraw money from their accounts.[6] The teller would ask for identification, verify via the signature card that the person was indeed authorized to withdraw money, and then obtain a bank officer's approval. If everything was in order, the teller would then effectuate the withdrawal. The next time the customer presented the passbook, a teller—after checking the records—would update the missing transaction in the passbook and make the notation "NOB," for "no book," where the teller's initials would have appeared had the passbook been presented during the prior transaction.

¶ 7 The Oregon Bank began computerizing its records in 1974. In 1980, the Oregon Bank stopped offering passbook accounts and converted all existing passbook accounts to statement accounts. The Oregon Bank placed signs around its branches and mailed notices to its clients about the conversion. For the new statement accounts, the Oregon Bank sent its customers itemized statements showing their withdrawals and deposits up to that time. After the conversion, a passbook provided a record of the account as it existed at the time of conversion, but, as the trial court found, the passbooks themselves became worthless. Banks thereafter relied on account statements and their records for an up-to-date summary of their clients' accounts. The Oregon Bank advised its account holders to throw their passbooks away. It later distributed its supply of old passbooks to school children for use as scratch pads or in connection with "personal finance day[s]" at schools.

## C. The Proceedings Below and Arguments on Appeal

¶ 8 After the Bank refused to honor Handy's request to withdraw funds from the passbook account, he filed this lawsuit in March 2004. The Bank later filed a motion for summary judgment, contending that Handy's claims were barred by the "twenty-year presumption of payment" doctrine, laches, and Oregon's Uniform Disposition of Unclaimed Property Act. The trial court denied summary judgment because material facts were in dispute. It also determined that the passbook was prima facie evidence that the passbook account existed and that its funds had not been withdrawn. After a bench trial early in 2006, the trial court determined that Oregon's common law presumption that "after 20 years, an obligation is presumed to have been paid" applied to bank deposits. It then determined that Handy failed to overcome the presumption.[7]

¶ 9 Handy appeals, arguing that the trial court erred in determining that the twenty-year common law presumption applied to savings accounts. He alternatively asserts that, if applying the presumption was appropriate, the date on which the twenty-year period began to run was the date when

6. Other jurisdictions have held that "rules printed on ... passbook[s] are only for the convenience and protection of the bank and may be waived." *Geist v. Robinson*, 332 Pa. 44, 1 A.2d 153, 155 (1938). *See also Mathey v. Central Nat'l Bank*, 179 Kan. 291, 293 P.2d 1012, 1014 (1956) ("[T]he bank rules printed in the depositor's passbook need not be complied with if the bank elects to waive requirements thereof, since such rules are for the convenience and protection of the bank and may be waived.").

7. At the same time, the court concluded that the Bank had failed to meet its burden on its affirmative defenses, i.e., the Bank failed to prove that the funds "had escheated to any State" or that Handy's claims were barred by laches. These determinations are not at issue in this appeal.

Handy first made a demand for payment in late 2003, not when the account was opened or when the deposits were made. Finally, he contends that even if the twenty-year presumption of payment applied, his evidence rebutted the presumption.

¶ 10 The Bank asserts that the twenty-year presumption of payment was properly applied under Oregon law. The Bank argues that, "[i]rrespective of whether the District Court correctly applied the common law presumption of payment rule, it found that Handy had failed to prove his claim by [a] preponderance of the evidence" because he failed to present a signature card showing that he was the owner of the account and failed to present trust documents showing that a trust actually existed. Thus, the Bank argues, "as a matter of law ... Handy was not entitled to the monies in the account."

## II. ISSUES AND STANDARDS OF REVIEW

¶ 11 The first issue is whether the trial court properly determined, under Oregon law,[8] that a twenty-year presumption of payment applies in this case. The second issue is when the presumptive period would begin to run in the savings account context. Both of these issues involve interpretation of case law, and we review a trial court's legal interpretations and conclusions regarding case law for correctness. *See Christiansen v. Farmers Ins. Exch.*, 2005 UT 21, ¶ 7, 116 P.3d 259.

¶ 12 The third issue is whether, irrespective of the trial court's application of Oregon's twenty-year presumption of payment, the factual findings and record support a determination that Handy failed to prove by a preponderance of the evidence that he is entitled to any funds by reason of the passbook.[9] In a bench trial, the determination of whether a plaintiff has proved his or her case by a preponderance of the evidence is a legal determination reviewed for correctness. *See Roderick v. Ricks*, 2002 UT 84, ¶¶ 27–28, 54 P.3d 1119 (discussing that a trial court's legal conclusions in a bench trial are reviewed under "a correction-of-error standard without any special deference"); *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 13, 20 P.3d 388 ( ["T]he determination of whether a party has made out a prima facie case is a question of law which we review for correctness, affording no deference to the trial court's judgment."); *State v. Labrum*, 959 P.2d 120, 124 (Utah Ct.App.1998) (indicating that a judicial determination that the State had not met its burden was a legal conclusion), *cert. denied*, 982 P.2d 88 (Utah 1999).

## III. ANALYSIS

### A. The Common Law Presumption of Payment

#### 1. Applicability to Savings Accounts

¶ 13 Handy contends that, under Oregon law, the twenty-year presumption of payment does not apply to passbook accounts because applying the doctrine to savings accounts "is neither logical nor consistent with

---

8. The liability of a bank for action or nonaction with respect to an item handled by it for purposes of presentment, payment, or collection is governed by the law of the place where the bank is located. In the case of action or nonaction by or at a branch or separate office of a bank, its liability is governed by the law of the place where the branch or separate office is located.

Utah Code Ann. § 70A–4–102(2) (2001). As the bank and branch in question are located in Oregon, we apply Oregon's laws respecting nonpayment by the Bank. However, under Utah's choice of law principles, we apply Utah's standards of review. *See Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 20, 54 P.3d 1054 ("While we apply Idaho law to the substantive issues presented in this case, we still follow our own rules of procedure. The standard of review is a matter of

procedural, rather than substantive, law.") (citations omitted).

9. As explained in this opinion, we reject the applicability of the presumption of payment. Given the possibility that the trial court's analysis could be tainted by the improper application of the presumption, we independently review the factual findings and record to determine whether Handy met his evidentiary burden. *See Dipoma v. McPhie*, 2001 UT 61, ¶ 18, 29 P.3d 1225 ("[A]n appellate court may affirm the judgment appealed from 'if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action[.]' ") (quoting *Limb v. Federated Milk Producers Ass'n*, 23 Utah 2d 222, 461 P.2d 290, 293 n. 2 (1969)).

the underpinnings and development of the doctrine."[10] We agree.

¶ 14 Ordinarily, when a creditor sues a debtor for payment and provides evidence that the debt exists, the burden shifts to the debtor to prove payment. *See Kahl v. Pool,* 47 Or.App. 43, 613 P.2d 1078, 1081 (1980) (stating "[p]ayment must be pleaded and proved by the party claiming it" in a case involving whether rent was due). The twenty-year presumption of payment is an evidentiary rule that has the effect of keeping that burden from shifting to the debtor. *See Beekman v. Hamlin,* 20 Or. 352, 25 P. 672, 672 (1891). *See also City of Pendleton v. Holman,* 177 Or. 532, 164 P.2d 434, 442 (1945) (discussing that "the presumption of payment after twenty years is a rule of evidence affecting the burden of proof"). After such a long period of time without collection action having been taken, the law presumes the debt must surely have been paid or forgiven, and the creditor must affirmatively prove nonpayment. *See Beekman,* 25 P. at 672 ("Within 20 years, the law presumes that the debt has remained unpaid, and the burden is on the debtor to prove payment, but after 20 years, 'the creditor is bound to show by something more than his bond that the debt has not been paid[.]' ") (quoting *Reed v. Reed,* 46 Pa. 239, 242 (1863)).

¶ 15 Citing *Dencer v. Jory,* 131 Or. 653, 284 P. 163 (1930), Handy argues that "[t]he Oregon Supreme Court has indicated that presumptions should apply only when doing so is consistent with their rationale." We agree that discussion in *Dencer* suggests that the Oregon Supreme Court's view is that an evidentiary presumption does not automatically apply when the circumstances of the case and policy reasons underlying the presumption do not make its application reasonable. *See id.* at 164–65.

¶ 16 Applying the twenty-year presumption of payment to savings accounts would, indeed, be inconsistent with the doctrine's policy, which, as stated by the Oregon Supreme Court,

> is founded on the "rational ground that a person naturally desires to possess and enjoy his own, and that an unexplained neglect to enforce an alleged right for a long period casts suspicion upon the existence of the right itself."

*Beekman,* 25 P. at 672 (quoting *Bean v. Tonnele,* 94 N.Y. 381, 386 (1884)). While this rationale certainly applies to the ordinary debtor-creditor relationship, where collection turns on the continued solvency of the debtor, the situation is necessarily different with a savings account—especially one at a federally insured institution. When people place money in savings accounts, they generally intend to leave it there for a while to let interest accrue. Years or even decades later, they fully expect their "nest egg" to be available for withdrawal, when and if they see fit. *See* 5B *Michie on Banks and Banking,* ch. 9, § 308 (2002) ("A depositor of funds into a bank savings account is entitled to believe that the deposit is entirely safe, that funds will be indefinitely available, and that no demand need be made and no action need be taken to protect the right to obtain those funds at any time the passbook is presented.").[11] *Cf. Haines v. First Nat'l Bank,* 89 Or. 42, 172 P. 505, 508 (1918) ("It is common knowledge that individuals leave money on deposit in banks for long periods of time beyond the six years prescribed in which an action for money may be instituted[.]").

¶ 17 Very simply, there is no "unexplained neglect" when a savings account holder waits many years before demanding funds in a savings account. Accordingly, based on Oregon's precedent and policies, we conclude that under Oregon law there is no reasonable

---

10. This issue would apparently be one of first impression in Oregon, as the cases called to our attention show that Oregon has only applied the twenty-year presumption of payment in cases involving enforcement of a judgment, *see Beekman v. Hamlin,* 23 Or. 313, 31 P. 707, 708–09 (1892), and foreclosure of a lien, *see City of Pendleton v. Holman,* 177 Or. 532, 164 P.2d 434, 436, 443 (1945).

11. We note that the Oregon Supreme Court has cited *Michie on Banks and Banking* on numerous occasions. *See, e.g., Modoc Meat & Cattle Co. v. First State Bank,* 271 Or. 276, 532 P.2d 21, 25 (1975); *United States Nat'l Bank v. Stonebrink,* 200 Or. 176, 265 P.2d 238, 243–44 (1954); *First Nat'l Bank v. Connolly,* 172 Or. 434, 138 P.2d 613, 622 (1943).

basis for applying the twenty-year presumption of payment to a savings account.[12] *See Dencer,* 284 P. at 165.

## 2. When Twenty–Year Presumptive Period Would Begin to Run

■ ¶ 18 Even if we are wrong about the inapplicability of the twenty-year presumption of payment to savings accounts, we agree with Handy that, if the presumption applies, the twenty-year period would not begin to run until Handy made his demand on the Bank. The Oregon Supreme Court has noted that "[t]he relation of a bank and its depositor is that of an ordinary debtor and creditor, except that by custom the bank is only liable upon demand made at its place of business." *Nodine v. First Nat'l Bank,* 41 Or. 386, 68 P. 1109, 1111 (1902). *See also Thompson v. Larsen,* 118 Or. 421, 247 P. 139, 140 (1926) (indicating that time period under presumption of payment does not begin to run until "the cause of action [has] accrued"); *Beekman v. Hamlin,* 19 Or. 383, 24 P. 195, 195 (1890) ("[T]he statute begins to run from the time when a cause of action arises thereon.") (citation and internal quotation marks omitted). *Cf. United States v. Wardwell,* 172 U.S. 48, 53, 19 S.Ct. 86, 43 L.Ed. 360 (1898) ("[A]uthorities ... h[o]ld that upon the ordinary deposit of money with a bank no action will lie until a demand has been made, by cheque or otherwise, and that hence the statute of limitations will not begin to run until after a refusal to pay on such demand."); *Blakeley v. First Nat'l Bank,* 151 Or. 655, 51

P.2d 1034, 1040 (1935) ("Holding as we do that plaintiffs' claim was a deposit liability, assumed by defendant, the statute would not begin to run until the plaintiffs' demand for the deposit had been refused."), *overruled on other grounds by Godell v. Johnson,* 244 Or. 587, 418 P.2d 505 (1966); *Haines,* 172 P. at 508 ("It is common knowledge that individuals leave money on deposit in banks for long periods of time beyond the six years prescribed in which an action for money may be instituted; yet no one would pretend that the statute of limitations had barred a claim for a deposit unless a demand for the same had been refused and the period had afterwards expired."); *State v. First Nat'l Bank,* 61 Or. 551, 123 P. 712, 714 (1912) ("[T]he liability of a bank to a depositor is continuous, and ... the statute of limitations does not begin to run until payment of such deposit is demanded and refused.").[13]

■ ¶ 19 The relationship between a savings account depositor and his or her bank is of indefinite duration, and the bank's liability to the depositor on a savings account does not begin to run until a demand has been made and refused, which is when a cause of action for nonpayment accrues. We therefore conclude that if the Oregon Supreme Court were to determine that the twenty-year presumption of payment applied to savings accounts, it would nonetheless have concluded that it did not begin to run in this case until Handy made his demand in late 2003.

**12.** New Jersey has also concluded that the twenty-year presumption of payment should not apply to savings accounts. *See Pagano v. United Jersey Bank,* 143 N.J. 220, 670 A.2d 509, 513–14 (1996). We reject as unpersuasive—and more importantly, believe the courts of Oregon would reject—the opinions from a few other states that have held to the contrary. *See, e.g., Owens v. Bank of Brewton,* 53 Ala.App. 529, 302 So.2d 114, 116–17 (1974) (applying the twenty-year presumption of payment in a dispute involving a passbook); *In re Estate of Fantozzi,* 183 Ill.App.3d 732, 132 Ill.Dec. 30, 539 N.E.2d 340, 342–43 (1989) (same); *Morse v. National Cent. Bank,* 150 Md. 142, 132 A. 598, 602–03 (1926) (same).

**13.** While some of the cases we rely on deal with statutes of limitation, the same principles are at issue. *See Pagano v. United Jersey Bank,* 143 N.J. 220, 670 A.2d 509, 514 (1996) ("[T]he history of

the presumption has made clear that it has followed the applicable statute of limitations and has always been applied by analogy to the limitations statute.").

The Bank argues that other cases that apply a twenty-year presumption of payment apply it from the day the account was opened, or from the date of the last activity on the account. We note that one case the Bank cites for this proposition actually involved a checking account rather than a savings account, and the court emphasized that a checking account "carries with it the idea of current or contemporary use." *Commerce Union Bank v. Horton,* 225 Tenn. 679, 475 S.W.2d 660, 662 (1972). The other two cases that the Bank cites contain no meaningful analysis regarding the issue. *See generally Owens v. Bank of Brewton,* 53 Ala.App. 529, 302 So.2d 114 (1974); *Hicks v. Exchange Bank & Trust Co.,* 252 Ark. 61, 478 S.W.2d 54 (1972).

## B. Failure of Proof

¶ 20 Handy requests that we enter judgment as a matter of law in his favor. Alternatively, he asks that we remand to the trial court because its factual findings and conclusions of law were based on the erroneous application of the twenty-year presumption of payment, resulting in an erroneous shifting of the burden of proof from the Bank (to prove payment of the passbook account funds) to him (to prove nonpayment).

¶ 21 As we conclude that Handy did not meet his ultimate burden of proof, we deny his first request. And remand is not necessary despite the trial court's erroneous application of the presumption. *See* Note 9, *supra*. Contrary to Handy's assertion, we do not think the factual findings were tainted by the trial court's application of the twenty-year presumption of payment.

¶ 22 A trial court's factual findings should ordinarily be unaffected by legal errors because factual findings are based on the credibility of the evidence and witnesses at trial. While the application of the presumption of payment certainly changed how the trial court applied the law to the facts of this case, its application did not change the facts themselves.[14] The factual findings and undisputed evidence convince us that Handy failed to prove by a preponderance of the evidence that he was entitled to the funds deposited in the passbook account, irrespective of the trial court's incorrect application of the presumption.

■■■ ¶ 23 As previously indicated, when a creditor sues a debtor for payment, the debtor generally has the burden of proving payment. *See Kahl v. Pool*, 47 Or.App. 43, 613 P.2d 1078, 1081 (1980). Likewise, when a depositor sues a bank and provides some evidence of deposit and no withdrawal, the bank has the burden of proving "payment to [the depositors] of the amount due or some lawful disposition of the funds deposited by them." *Wells v. First Nat'l Bank*, 80 Or. 329, 157 P. 145, 146 (1916), *overruled on other grounds by Godell v. Johnson*, 244 Or.

587, 418 P.2d 505 (1966). *See also* 5B *Michie on Banks and Banking*, ch. 9, § 368c (2002) ("When a bank is sued for money received on deposit, it has the burden of showing a proper disposition thereof.").

¶ 24 In view of the Bank's evidence of "lawful disposition," Handy, having filed this lawsuit to recover the funds in the passbook account, ultimately had to prove, by a preponderance of the evidence, *see Morris v. Farmers Home Mut. Ins. Co.*, 28 Utah 2d 206, 500 P.2d 505, 507 (Utah 1972); *Hansen v. Hansen*, 958 P.2d 931, 934 (Utah Ct.App. 1998), that he was entitled to receive those funds. The passbook, which stated that Handy was trustee for the passbook account, was prima facie evidence that the account existed at one time, that the funds had been deposited, and that he had not withdrawn any funds from the account. Given this evidence, the trial court correctly determined that summary judgment was not appropriate because there was an issue of fact regarding whether Handy was entitled to the funds. As plaintiff, however, Handy's burden at trial was to prove by a preponderance of the evidence that he was entitled to the passbook funds—not just to present prima facie evidence consistent with that possibility.

■■■ ¶ 25 Prima facie evidence is not conclusive evidence; rather, it is " 'that quantum of evidence that suffices for proof of a particular fact until the fact is contradicted by other evidence; once a trier of fact is faced with conflicting evidence, it must weigh the prima facie evidence with all of the other probative evidence presented.' " *Child v. Gonda*, 972 P.2d 425, 432 (Utah 1998) (quoting *Black's Law Dictionary* 1190 (6th ed.1990)). *See Pagano v. United Jersey Bank*, 143 N.J. 220, 670 A.2d 509, 515 (1996) ("The passbook ... constitutes prima facie, but not conclusive, evidence that the amount credited was received by the bank and thus is open to explanation and contradiction with respect to what happened to the deposit."); *Bank of Lawrenceville v. Rockmore & Co.*, 129 Ga. 582, 59 S.E. 291, 293 (1907) (discussing that it was proper for the trial court to

---

14. Contrary to the Bank's assertion, Handy's failure to marshal the evidence supporting the factual findings is not fatal to his appeal because he only challenges the trial court's legal conclusions. *See Carsten v. Carsten*, 2007 UT App 174, ¶ 7, 164 P.3d 429.

refuse a jury instruction that treated a passbook, in an action to recover a deposit balance, "as being conclusive [evidence] as to the state of the account"). On the other hand, proof by a "[preponderance of the evidence] means the greater weight of the evidence, or as sometimes stated, such degree of proof that the greater probability of truth lies therein." *Wightman v. Mountain Fuel Supply Co.*, 5 Utah 2d 373, 302 P.2d 471, 473 n. 5 (1956) (quoting *Alvarado v. Tucker*, 2 Utah 2d 16, 268 P.2d 986, 988 (1954)) (alteration in original).

¶ 26 Handy is correct in his assertion that the passbook constituted prima facie evidence that $150,000 had been deposited into the passbook account and that he had not withdrawn any money from the account. The burden then shifted to the Bank to specifically contradict that evidence or to present other evidence tending to disprove Handy's entitlement to the passbook funds. The trial judge, as the trier of fact, then had to weigh the evidence presented by both parties. In considering Handy's evidence, we note that the trial court was not limited only to considering the passbook itself. The other evidence that Handy presented, i.e., his own testimony, undermined the force of the passbook's evidentiary value. Handy testified that he never saw the signature card for the passbook account and that he could not remember ever signing any documents for the Bank. Furthermore, the trial court found that he did not sign a signature card for the account.

¶ 27 This evidence, or lack thereof, is critically important because the Bank presented evidence that whoever's name was on the signature card was the owner of the account and could withdraw money without the passbook. Moreover, someone had to sign a signature card to open the passbook account, and if Handy did not, the only reasonable conclusion is that someone else owned the account and had the authority to withdraw funds without the passbook. Indeed, the Bank presented evidence tending to show that Handy was not entitled to the funds because his name was not on the signature card and because the person whose name

was on the card could have withdrawn the money at any time and closed the account.

¶ 28 Also highly probative is the evidence that the Bank converted passbook accounts to statement accounts and that passbooks at that point became worthless. The Bank's testimony was that if the passbook account had still been open in 1980, it would have been converted to a statement account and the Bank would have sent appropriate notices of the conversion to the account owner or owners at the address(es) it had on file. Handy testified that he was never notified of any conversion. Given the Bank's testimony, this means either that the Bank notified the actual account owner or the account owner had already closed the account.

¶ 29 Additionally, the Bank presented testimony that showed it only destroyed records for accounts after they had been closed for seven years and that their system would not let them close accounts if a balance remained. This testimony suggests that the passbook account was closed at some point in time, many years ago, after all the funds were withdrawn.

¶ 30 The Bank's evidence, then, convincingly refuted Handy's prima facie evidence that he was entitled to the funds. The Bank demonstrated the substantial likelihood that some other person owned the account and was entitled to withdraw the funds or close the account—and could properly do so notwithstanding Handy's possession of the passbook. None of the other evidence Handy presented tended to lessen this likelihood, particularly when he candidly testified that he had never seen the passbook before he found it in his junk drawer and that how he obtained the passbook was a "complete mystery."

¶ 31 We further note that this case is distinguishable from *Pagano v. United Jersey Bank*, 143 N.J. 220, 670 A.2d 509 (1996), relied on by Handy. In *Pagano,* a daughter found a passbook belonging to her deceased mother about twenty years after the account was opened. *See* 670 A.2d at 510. Claiming that it did not have a record of the account and that a presumption of payment applied, the defendant bank refused to make payment. *See id.* The court held that the pre-

sumption did not apply to savings accounts. *See id.* at 513–14. It then affirmed the jury's determination that the daughter was entitled to payment because, after being properly instructed, the jury found that the defendant bank had not met its burden of proof. *See id.* at 515–16. In contrast to our case, the parties in *Pagano* presented no evidence casting doubt on whether the daughter's deceased mother actually owned the account, or whether someone other than her mother was equally entitled to withdraw funds without presenting the passbook. *See generally id.* at 510–11. In the case before us, there is absolutely no evidence establishing Handy as the owner of the account, even though his name is the only name on the passbook, given his testimony that he did not open the account or sign a signature card or any other documents for the Bank. For the reasons discussed, we conclude, as a matter of law, that Handy did not prove by a preponderance of the evidence that he was entitled to any funds by reason of the passbook account.

## IV. CONCLUSION

¶ 32 We agree with Handy that, under Oregon law, the twenty-year presumption of payment does not apply to savings accounts. Even if the presumption did apply to savings accounts, it would not have been applicable in this case, as the twenty-year period would not have started to run until Handy made his demand on the Bank. Nonetheless, Handy failed to prove by a preponderance of the evidence that he had any claim on the passbook account. While disagreeing with some of its analysis, we therefore affirm the trial court's ultimate judgment.

¶ 33 I CONCUR: JUDITH M. BILLINGS, Judge.

¶ 34 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Judge.