**Cherie Lynn TUCKER, Plaintiff and Respondent,**

v.

**James Calvin TUCKER, Defendant and Petitioner.**

No. 940486.

Supreme Court of Utah.

Jan. 17, 1996.

Suzanne Marelius, Salt Lake City, for plaintiff.

Mary C. Corporon, Salt Lake City, for defendant.

ON CERTIORARI TO THE UTAH
COURT OF APPEALS

RUSSON, Justice:

This is a divorce action in which the trial court awarded permanent physical custody of a minor child to her father. The mother appealed the trial court's decision to the Utah Court of Appeals. The court of appeals held that the trial court's findings of fact were inadequate to support the custody award and reversed and remanded for further findings. *Tucker v. Tucker,* 881 P.2d 948, 955 (Utah Ct.App.1994). The father, contesting the court of appeals' reversal, petitioned for a writ of certiorari which this court granted. *Tucker v. Tucker,* 890 P.2d 1034 (Utah 1994).

I. BACKGROUND

Cherie Lynn Tucker (Lynn) and James Calvin Tucker (James) were married February 26, 1988. The couple separated in June 1991. Lynn, with James's assent, took their three-year-old child to live with her. On September 27, 1991, Lynn filed a complaint for divorce in Third District Court. Approximately one month later, the parties appeared before a district court commissioner to resolve various contested and uncontested matters pending final resolution of the litigation. One of the contested matters involved temporary custody of their child. The commission-

er recommended that Lynn have temporary custody and that the parties submit to a custody evaluation. The trial court agreed and entered an order granting temporary custody to Lynn. The court further ordered James and Lynn to submit to a custody evaluation to be performed by an evaluator mutually agreed upon by the parties.

The evaluator mutually chosen by the parties, Dr. Monica Christy, rendered a report recommending that James and Lynn have joint legal custody of their child but that James be awarded physical custody. Thereafter, Lynn retained another evaluator, Dr. Donald Strassberg, who prepared a report as to her parental ability. However, because he did not evaluate James, Dr. Strassberg made no recommendation as to which parent would be the best custodian.

The matter came to trial on February 22 and 23, 1993. Testimony was received from Lynn, James, Dr. Christy, Dr. Strassberg, Carol Birch (Lynn's mother), Donna Steadman (the child's day care provider), and several individuals who had been neighbors of the parties during their marriage. Also, the reports of both Dr. Christy and Dr. Strassberg were received into evidence.

The evidence revealed that Dr. Christy interviewed both James and Lynn, their daughter, Carol Birch, and Donna Steadman. She reported that while both parents seemed able to care for the child and appeared equally bonded to her, she had concerns about Lynn's mood swings and unstable relationships. Dr. Christy stated, "Mrs. Tucker is not as settled in her identity, has been given to mood swings, and is more conflicted and less stable in relationships with others" and predicted that "continued fluctuations in mood and relationships seem likely." Dr. Christy further expressed concern about Lynn's stability in her personal relationships due to her two short marriages and her commencement of a third intimate relationship within one year prior to trial. Dr. Christy suspected that Lynn would continue to have relationship problems with both men and women until she made more progress in therapy and confronted repressed feelings. Dr. Christy also stated that considering each parent's work schedule, the child would be in surrogate care approximately the same amount of time if she were placed with either parent. On the basis of her interviews and assessments, Dr. Christy recommended that James should have physical custody.

Dr. Strassberg testified that he met with Lynn, the child, and Lynn's therapist, Dr. Jodie Leslie, but did not interview James. Although Dr. Strassberg agreed with Dr. Christy as to Lynn's history of mood fluctuations, he differed as to the extent of Lynn's emotional problems. In his evaluation, Dr. Strassberg reported that Lynn had improved through counseling and medication. He further reported that Dr. Leslie viewed Lynn as normal and an excellent mother. Dr. Strassberg looked upon Lynn's relationship with, and care of, the child for eighteen months between the temporary custody order and the trial as factors weighing heavily in her favor. According to Dr. Strassberg, during the child's stay with Lynn, she "thrived under her mother's care." Further, Dr. Strassberg's report described the relationship between Lynn and her daughter as very strong. Because his investigation did not include an evaluation of James, Dr. Strassberg stated that he was "unable to address the absolute or relative merits of James Tucker as a custodial parent." Nevertheless, Dr. Strassberg found no deficiency as to Lynn's parental ability.

Lynn Tucker gave testimony concerning her relationship with the child. Generally, Lynn described the relationship as close and open. She testified that they would go to the park, to movies, and for ice cream.

Lynn also discussed her personal life during the parties' separation. Lynn described herself as a lesbian, involved in an amorous cohabitation with another woman. Their cohabitation began in September 1992 when Lynn's companion moved in with her and her daughter at the home of Lynn's mother. Lynn further testified that shortly before trial, she and her companion purchased and moved into a home.

In addition, Lynn testified that during the eighteen months in which she had temporary custody, she and her daughter moved three times. After the separation, they moved

from the marital residence and lived alone in a home in Sandy, Utah. A year later, the two moved to the home of Lynn's mother in Salt Lake City. After approximately seven months, they moved to a third residence. According to Lynn, during this time, the child stayed with James on alternating weekends and James could visit any other time as long as he called ahead.

Lynn further testified that during the marriage, she and James shared the primary care of the child equally; she cared for the child while James worked, and James saw to her needs while Lynn worked. In addition, Lynn explained that during the times when neither parent was working, each took turns meeting the child's essential needs. With regard to her work schedule, Lynn testified that after the child's birth, she maintained her job as a customer service representative for TCI Cablevision of Utah. In discussing her usual work schedule, Lynn testified to the effect that she would work 189 hours over a four-week period.

James testified that he worked for TCI Cablevision of Utah as an installer technician and to the effect that over a four-week period, he would work 180 hours. Also, James testified that since the separation, he remained in the marital home. In addition, James discussed his involvement in his child's life following the separation, which included weekday meetings and lengthy visits on alternating weekends when he would retrieve her on Thursday evenings and keep her through Sunday evenings. In addition, James described himself as an active member and regular attender of his church.

Donna Steadman, the child's day care provider for three months during the parties' marriage, testified that the child seemed more closely attached to her father. When she became injured or upset, she would cry out for James rather than for Lynn. Also, several neighbors of the parties testified that James often cared for the child alone while Lynn visited friends. Finally, Lynn's mother testified that the child's involvement in church activities was important and enjoyable to her but that Lynn's church attendance was irregular.

Following a two-day trial, the trial court awarded James custody on the basis of the following findings of fact:

22. The court finds that the issue of greatest concern to both parties to this action is the issue of child custody. It is reasonable, just and proper, and is in the best interest of the minor child, that [James] be awarded the permanent physical care, custody, and control of the child, subject to [Lynn's] reasonable and liberal rights of visitation as defined below. In support of this finding regarding custody, the court makes the following specific findings:

a. A child custody evaluation was conducted herein by Dr. Monica Christy, who was the only independent evaluator at the time of trial, regarding the issue of custody. Dr. Monica Christy recommended that [James] have custody of the parties' minor child. An evaluation was conducted herein by Dr. Donald Strassberg, who assessed [Lynn] and the parties' child, but did not assess [James]. Dr. Strassberg found that [Lynn] was a fit and appropriate parent and that custody should be awarded to [Lynn]. The court finds that it should rely on the recommendation of Dr. Monica Christy and should not accept the recommendation of Dr. Donald Strassberg;

b. The minor child is now four years of age and is not yet attending school. [Lynn] has had the temporary care, custody and control of the minor child during the pendency of these divorce proceedings, at first by reason of the parties' conduct, and then pursuant to temporary order of this court, and this condition has existed since approximately July 1, 1991;

c. The court finds that a change in custody of the minor child from [Lynn] to [James] will not be substantially traumatic to the minor child because of her age, general condition of health and well being as testified to by Dr. Monica Christy, and Dr. Donald Strassberg, the level of bonding to her father, and the circumstances of the parties. The court

finds that in the long run, any trauma caused by a change in the custody arrangement will be temporary and will be off-set by a long term advantage of the minor child of living with her father;

d. The court finds that the minor child has a stronger bonding to her father, based upon the testimony of the minor child's day care provider. The court finds that the minor child is also closely bonded to her mother;

e. The court finds that there is a history of emotional instability on the part of [Lynn]. The court finds that there has been substantial progress made by [Lynn] during the separation of the parties, in personal therapy and treatment, and the court commends her for this progress, but the court finds that the father is still significantly more stable;

f. The court finds that the issue of the minor child's preference is moot, for the reason that the child has expressed no preference, and the child is of such tender years that any preference expressed would be irrelevant;

g. The minor child has no siblings, half-blood siblings, nor step-siblings. Therefore, a consideration of the status of her siblings is not relevant in this action;

h. The court finds that [James] is able to spend a bit more time providing personal care for the minor child then [sic] is [Lynn];

i. The court finds that the child's church functions and activities are important personally to the child. The court finds that there is more religious compatibility between [James] and the minor child, and that [James] is more likely to foster a continued involvement of the minor child in church activities in which she has previously participated than is [Lynn];

j. The court finds that, because of moral issues presented in this case, [James] is a more fit parent to exercise custody of the minor child than is [Lynn]. Specifically, the court analyzes the circumstances of [Lynn] as follows:

i. [Lynn] and other witnesses have testified to the status of [Lynn] as a lesbian or bisexual individual who is currently involved in a monogamous intimate relationship, that amounts to a cohabitation, with another woman. Specifically, [Lynn] and her female companion have purchased a home together and cohabited together for a period of approximately five months prior to trial, first in the home of [Lynn's] parents, then in their own home, prior to the trial;

ii. The court finds that the status of [Lynn] as a lesbian or bisexual does not bear directly on her parenting abilities, and the court finds that she should not be deprived of custody of her minor child based upon her sexual preference. Both Dr. Monica Christy and Dr. Donald Strassburg [sic] testified that homosexuality is not a mental illness nor a deviancy, and the court adopts this finding;

iii. [Lynn] has chosen to act out her sexual preference by conducting a relationship with a woman companion involving cohabitation without benefit of marriage in the same home with the minor child. The court finds that this can be analyzed and should be analyzed similarly to a situation involving cohabitation with a member of the opposite sex without benefit of marriage in the presence of a minor child. The court finds that this conduct on the part of [Lynn] during the pendency of this action and prior to the custody trial in this matter demonstrates a lack of moral example to the child and a lack of moral fitness. This conduct is unlawful in the State of Utah; and,

k. [Lynn's] companion was not a witness at trial nor evaluated by any expert witness as to her fitness to act in the role of step-parent to the child.

The court of appeals reversed and remanded, holding the trial court's findings inadequate to support its custody determination. *Tucker v. Tucker*, 881 P.2d 948, 955 (Utah Ct.App.1994). The court of appeals held that

the trial court failed to link two of its findings—Lynn's emotional instability and moral unfitness—to her parenting ability. *Id.* at 953–54. In doing so, the court of appeals suggested that the trial judge neglected to give appropriate emphasis to the successful period of temporary custody. *Id.* at 954 & n. 4. It further noted that the trial court's findings concerning religious compatibility, parental bonding, and the amount of time each parent could spend with the child were supported by "skimpy record evidence at best" and "hardly persuasive enough to disrupt a successful 18–month–long temporary custody arrangement." *Id.* at 952 n. 3. Also, the court of appeals questioned the trial court's analysis of Lynn's cohabitation with another woman. *Id.* at 954 n. 6.

On certiorari, James asserts that the court of appeals erred in failing to apply the proper legal standard established for initial custody determinations and improperly found that the trial court had made inadequate findings of fact on the issue of custody. He further argues that the court of appeals substituted its own analysis of the trial record for the analysis of the trial judge. Particularly, James contends that the court of appeals, by giving undue weight to the period of temporary custody, improperly treated this case as one of change of custody rather than as an initial determination of custody. He also argues that the court of appeals erred in suggesting that evidence was insufficient to support the findings of fact. Lynn counters that the court of appeals was correct in deciding that the findings of the trial judge were inadequate and that the findings were not supported by the evidence. Furthermore, Lynn contends that the court of appeals correctly analyzed the temporary custody period.

## II. ANALYSIS

■ In determining permanent physical custody of a minor child, trial judges are accorded broad discretion. *See Davis v. Davis,* 749 P.2d 647, 648 (Utah 1988); *Moody v. Moody,* 715 P.2d 507, 510 (Utah 1985). "Only where the trial court's judgment is so flagrantly unjust as to be an abuse of discretion, will [an appellate court] interpose its own judgment." *Shioji v. Shioji,* 712 P.2d 197, 201 (Utah 1985). The trial court's discretion stems from the reality that in some cases the court must choose one custodian from two excellent parents, and its proximity to the evidence places it in a more advantaged position than an appellate court. *Id.* As this court has previously explained, the determination of custody "may frequently and of necessity require a choice between good and better." *Hogge v. Hogge,* 649 P.2d 51, 55 (Utah 1982). However, while the trial court has broad discretion, it must be guided at all times by the best interests of the child. Utah Code Ann. § 30–3–10(1).

■ In this case, the court of appeals limited its review to the adequacy of the trial court's findings of fact and reversed on the ground that the trial court failed to link two of its findings to Lynn's parental inability. *Tucker,* 881 P.2d at 951, 953–54. In doing so, the court of appeals purportedly refused to reach the other issues raised by Lynn, which it identified as (1) whether the trial court abused its discretion by ordering a change of custody; (2) whether the trial court's moral fitness analysis demonstrates a bias against homosexual parents; and (3) whether certain factual findings were clearly erroneous. *Id.* at 951. However, the court of appeals did, in footnotes and throughout its opinion, reach these issues and found that the trial court, to a certain extent, committed the errors alleged by Lynn. *See id.* at 952 n. 3, 953–54 & n. 4, 954 & n. 6. Our review will address, first, the court of appeals purported reason for reversal: the inadequacy of the trial court's findings. Thereafter, the court of appeals' oblique discussion of the other issues compels an examination of its conclusions regarding the temporary custody period, the factual findings' evidentiary support, and the trial court's alleged bias against homosexual parents in its moral fitness analysis.

The court of appeals mistook this case as one in which the fitness of a parent is questioned. It reversed the trial court's award on the ground that it "failed to indicate how [Lynn's emotional problems] affected, if at all, [her] ability to adequately meet the needs of her daughter" and "link [her lack of moral example] to [her] ability to function as a

nurturing and supportive custodial parent." *Tucker*, 881 P.2d at 953, 954. However, the issue before the trial court was not whether Lynn should be deprived of her parental rights for lack of parental ability or fitness. What was at issue was which of two basically good parents should have custody of the child. As stated above, the determination of custody governed by the best interests of the child "may frequently and of necessity require a choice between good and better." *Hogge*, 649 P.2d at 55. Often, when there are two equally suitable parents, the trial judge may be compelled to base a custody award upon observations of the parents in court, the reactions of the child to each parent, or other factors. A trial court need not find one parent inadequate before awarding custody to the other.

▄▄▄ A review of the trial court's findings of fact in this case reveals that the trial court thoroughly followed the mandates set forth by this court concerning custody determinations. This court has held that a trial court must set forth written findings of fact and conclusions of law which specify the reasons for its custody decision. *Smith v. Smith*, 726 P.2d 423, 425 (Utah 1986). We have further held that where applicable, certain factors should be considered, including factors relating to a child's feelings or needs:

> the preference of the child; keeping siblings together; the relative strength of the child's bond with one or both of the prospective custodians; and, in appropriate cases, the general interest in continuing previously determined custody arrangements where the child is happy and well adjusted.

*Hutchison v. Hutchison*, 649 P.2d 38, 41 (Utah 1982) (footnotes omitted). The trial court should also consider factors relating primarily to the prospective custodians' character and capacity to function as parents, such as

> moral character and emotional stability; duration and depth of desire for custody; ability to provide personal rather than surrogate care; significant impairment of ability to function as a parent through drug abuse, excessive drinking, or other cause; reasons for having relinquished custody in

the past; religious compatibility with the child; kinship, including, in extraordinary circumstances, stepparent status; and financial condition. (These factors are not necessarily listed in order of importance.)

*Id.* Here, the trial court utilized numerous *Hutchison* factors, including parental bonding, custodial stability, moral fitness, emotional stability, time availability, and religious compatibility. In its written findings of fact, the trial court indicated that most of these factors favored James. First, the trial court found that the child had a stronger bonding to James. Also, because of concerns relating to Lynn's cohabitation, the trial court found that James would serve as a better moral example to the child. In addition, the trial court found that due to Lynn's history of emotional instability, James appeared more stable. Also, the trial court found that James has more time than Lynn to spend with the child. The trial court further found that the child was more religiously compatible with James than with Lynn. On the basis of these findings, the trial court concluded that James should be awarded permanent physical custody. The trial court's findings are clearly adequate to support the custody award.

▄▄▄ Also, the court of appeals gave undue significance to the temporary custody period. Quoting an opinion from this court, the court of appeals stated, " '[A] lengthy custody arrangement in which a child has thrived ought rarely, if at all, to be disturbed, and then only if the circumstances are compelling.' " *Tucker*, 881 P.2d at 953 n. 4 (quoting *Elmer v. Elmer*, 776 P.2d 599, 604 (Utah 1989)). The court of appeals' reliance on *Elmer*, however, is misplaced. That case concerned a proposed modification to a permanent custody award. *Elmer*, 776 P.2d at 603-04. The case before us involves only a temporary custody order.

▄▄▄ A temporary custody order is only that, temporary. It is effective only until a fully informed custody determination can be made at a final hearing. Temporary custody is not to be treated as permanent custody. Permanent custody is modifiable only upon a threshold showing of a substantial and mate-

rial change of circumstances. *Hogge*, 649 P.2d at 54–56. If a temporary order of custody were to be given permanent status subject to *Hogge*'s changed-circumstances test, no party would ever stipulate to a temporary arrangement and every hearing on temporary custody would involve the time-consuming presentation of witnesses, both expert and lay, as well as other types of evidence. In short, a temporary custody hearing would become a permanent custody hearing.

Accordingly, this court has held that a temporary custody order should not be given the weight of a permanent order. In *Boals v. Boals*, 664 P.2d 1191 (Utah 1983), this court directed that at the expiration of a temporary custody period,

> [a]ssuming each party remains fit and proper to serve as the custodial parent, in order for plaintiff to be successful in seeking custody she need not make a showing of changed circumstances in the usual sense that is required to modify an order of *permanent* custody. She need only make a showing that an award of custody to her would best serve the interests of the child.

*Id.* at 1194 (footnote omitted).

This is not to say that the environment in which a child has lived prior to the final custody hearing should be ignored in determining initial custody. It certainly should not be ignored and, in this case, was not. The trial court recognized the child's eighteen-month stay with Lynn but found that the custodial period did not outweigh other factors which favored James. Particularly, the trial court found that a change would not overly disrupt the child and any stress caused by the change would be offset by the advantages to her in living with her father. As long as the trial court did not abuse its discretion, it was entitled to accord no more or no less significance to the existing custody arrangement than it deemed appropriate. The trial court did not abuse its discretion, and the court of appeals' suggestion to the contrary was erroneous.

The court of appeals further suggested that certain findings of fact were supported by insufficient evidence or, in its own words,

"skimpy record evidence at best." *Tucker*, 881 P.2d at 952 n. 3. Faced with a challenge to a finding's evidentiary sufficiency, "[t]he issue on appeal is not whether the trial court's findings accord with our own view of the evidence, but whether, viewing the evidence and reasonable inferences therefrom in the light most favorable to the findings, the findings are supported by the evidence." *Shioji*, 712 P.2d at 201.

The court of appeals deemed three findings in particular as unsupported by sufficient evidence, namely, that (1) James was more closely bonded with the child, (2) James was able to spend more time with her, and (3) James was more religiously compatible with her. According to the court of appeals, "The record clearly shows that both parents are bonded to their daughter, that they both have roughly the same number of hours each week to spend with [her], and that both parents have expressed a willingness to allow [her] to continue participating in LDS primary," a religious activity for children. *Tucker*, 881 P.2d at 952 n. 3. The court of appeals found the parents equal with respect to these three considerations. It cannot be said that a trial court has abused its discretion in awarding custody to one parent over another where analysis reveals that the best interests of the child would be served equally well with either parent. The child cannot be divided into two parts. However, in the case before us, the trial judge actually found James preferable.

The first challenged finding is the trial court's determination that the child is more closely bonded to her father. The trial court heard testimony to this effect from Donna Steadman, the babysitter. While the court of appeals provided no basis for its assertion concerning this finding, Lynn argues that Ms. Steadman's evidence should not be given more weight than that of the experts who reported that the child was equally bonded to both parents. However, the trial court, as trier of fact, was entitled to weigh the evidence and reject all or part of any witness's testimony, *Chandler v. Mathews*, 734 P.2d 907, 909 (Utah 1987), even that of an expert. The trial court's finding regarding parental bonding is clearly supported by the evidence.

The next contested finding is that James was able to spend more time than Lynn with the child. This finding was based upon evidence concerning each party's work schedule and propensity to spend free time with the child. James worked 180 hours over a four-week period compared to Lynn's 189 hours. In addition, individuals who were Lynn and James's neighbors testified that during their marriage James spent more free time than Lynn with the child. Thus, in suggesting that both parents "have roughly the same number of hours each week to spend with" the child, the court of appeals was mistaken. The evidence shows that over a four-week period, James has nine more hours to spend with the child and that James has a proven tendency to spend more free time with her. While the time difference may appear inconsequential, the trial court was justified in determining that at her age, that extra attention would better serve the child's interests. Thus, this finding is supported by the evidence.

The final contested finding is the trial court's determination that the child is more religiously compatible with James than with Lynn. Lynn's mother testified that church activities are enjoyable and important to the child. She also testified that Lynn did not attend church every weekend. In contrast, James testified that his church attendance was regular. Clearly there is evidence to support the trial court's finding.

In reviewing the trial court's contested findings, the court of appeals ignored its obligation to review all of the evidence instead of only selected portions. Just as an appellant must marshal all of the evidence to demonstrate a factual finding's clear error, *State v. Walker*, 743 P.2d 191, 193 (Utah 1987); *Riche v. Riche*, 784 P.2d 465, 468 (Utah Ct.App.1989), the court of appeals must consider all of the evidence when reviewing such a challenge. *See Shioji*, 712 P.2d at 201. In adjudging the evidence regarding these findings insufficient, the court of appeals ignored the evidence supporting the findings and thereby ignored *Shioji's* instructions.

Finally, we consider the court of appeals' footnote concerning the trial court's moral fitness analysis. After finding the sexual orientation of Lynn irrelevant to her parenting abilities, the trial court analyzed Lynn's cohabitation with a same-sex partner in the same way such a living arrangement with a member of the opposite sex would be analyzed. The trial court did not find Lynn immoral because of her homosexuality. The trial court specifically found that Lynn's status as a lesbian "[did] not bear directly on her parenting abilities, and ... that she should not be deprived of custody ... based on her sexual preference." Rather, it questioned her moral fitness for cohabiting with another person in the presence of the child before the divorce, while she was still married to James:

> [Lynn] has chosen to act out her sexual preference by conducting a relationship with a woman companion involving cohabitation without benefit of marriage in the same home with a minor child. The court finds that this can be analyzed and should be analyzed similarly to a situation involving cohabitation with a member of the opposite sex without benefit of marriage in the presence of a minor child. *The court finds that this conduct on the part of [Lynn] during the pendency of this action and prior to the custody trial in this matter demonstrates a lack of moral example to the child and a lack of moral fitness.* This conduct is unlawful in the State of Utah[.]

The court of appeals criticized the lower court's analysis because it unfairly punished cohabiting homosexuals. According to the court of appeals, "[U]nder Utah law, homosexual couples, unlike heterosexual couples, cannot be married even if they so desire.... The unlawful cohabitation may be the natural result of Utah's law prohibiting same-sex marriages rather than a desire by Ms. Tucker to cohabit without the benefit of marriage." *Tucker*, 881 P.2d at 954 n. 6. In criticizing the trial court, the court of appeals addressed an issue that was not properly before it. The issue was not whether a trial court could properly question a parent's morality where that parent merely cohabited with a member of the same sex. Rather, the issue was whether a trial court could proper-

ly question the morality of a parent who had cohabited with another person before the divorce and while still married. The trial court found that the occurrence of this conduct during the marriage and in the presence of the child demonstrated Lynn's lack of moral example. It cannot be said that the trial court abused its discretion in reaching this conclusion.

## III. CONCLUSION

Inasmuch as the trial court's findings of fact are supported by the evidence and the findings are sufficient to support the trial court's award of custody, the court of appeals erred in reversing the trial court's custody award to James. Therefore, we reverse the decision of the court of appeals and reinstate the trial court's order awarding James primary physical custody of the child.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and DURHAM, JJ., concur in Justice RUSSON's opinion.