2007 UT App 174

**Cheryl CARSTEN, Petitioner and Appellee,**

v.

**Brian CARSTEN, Respondent and Appellant.**

No. 20060157–CA.

Court of Appeals of Utah.

May 24, 2007.

Christina I. Miller, Park City, for Appellant.

David S. Dolowitz, Dena C. Sarandos, and Thomas J. Burns, Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and ORME.

## MEMORANDUM DECISION

ORME, Judge:

¶1 We have determined that "[t]he facts and legal arguments are adequately presented in the briefs and record[,] and the decisional process would not be significantly aided by oral argument." Utah R.App. P. 29(a)(3). Moreover, the issues presented are readily resolved under existing law.

¶2 The main issue on appeal is whether the trial court, which awarded joint legal custody, abused its discretion in granting Cheryl Carsten (Wife) primary physical custody (seventy percent of the total time) of the parties' two autistic children.[1] Brian Carsten (Husband) asserts that "the only reason for the unequal split of physical custody was the [trial] court's finding that [he] had used 'legal but unsavory accounting principles'" by aggressively deducting expenses from his business's net income, thereby reducing the amount he had to pay Wife each month as court-ordered temporary family support. Accordingly, he argues that the trial court's heavy reliance on this finding to reduce his custodial time was effectively a punishment for what the trial court termed "cheating the children," but which had no demonstrated bearing on the children's best interest and, thus, was an abuse of discretion. *See Davis v. Davis*, 749 P.2d 647, 648 (Utah 1988) ("The law does not, when determining custody of a child, attempt to reward or punish one parent or the other."); *Deeben v. Deeben*, 772 P.2d 972, 974 n. 4 (Utah Ct.App.1989) ("We emphasize trial courts must not reward or punish parents for their conduct during a marital relationship through a custody award."). While Husband's point is well-taken conceptually, we conclude that the trial court's custody determination is readily sustainable in light of its factual findings when taken as a whole.

¶3 "In divorce proceedings, including initial custody awards, we give trial courts broad discretion." *Davis*, 749 P.2d at 648. On appeal, we will overturn a trial court's final judgment only if it constitutes an abuse of discretion. *See Tucker v. Tucker*, 910 P.2d 1209, 1214 (Utah 1996).

> The trial court's discretion stems from the reality that in some cases the court must choose one custodian from two excellent parents, and its proximity to the evidence places it in a more advantaged position than an appellate court.... However, while the trial court has broad discretion, it must be guided at all times by the best interests of the child.

*Id.*

¶4 When considering joint custody and determining what is in the best interests of a child, a trial court must consider certain statutory factors including "the past conduct and demonstrated moral standards of each of the parties[,]" Utah Code Ann. § 30-3-10(1)(a)(i) (Supp.2006), and "any other factors the court finds relevant" when "determining whether the best interest of a child will be

---

1. The trial court indicated in its Memorandum Decision of August 19, 2005, that the children "are on the autism spectrum," but that it did not believe that the children "ha[d] been formally diagnosed 'autistic.'"

served." *Id.* § 30–3–10.2(2)(j). When making a custody determination, the trial court's broad discretion includes "assess[ing] . . . the relevant factors and [according] the appropriate weight to be given each under the particular facts of the case." *Deeben,* 772 P.2d at 974.

¶ 5 We emphasize, however, that *all* of the factors a trial court considers must relate to, and bear on, the best interests of the children. *See Tucker,* 910 P.2d at 1214 ("[W]hile the trial court has broad discretion [when determining permanent physical custody], it must be guided at all times by the best interests of the child."); Utah Code Ann. § 30–3–10(1)(a) (requiring a court to "consider the best interests of the child" and then listing relevant factors it must consider). Thus, even though trial courts have broad discretion in making custody determinations, they must not use a custody award to punish parties who have acted in offensive or immoral—much less "unsavory"—ways *unless* those actions reflect poor parenting or otherwise bear on the best interests of the children. *See* Utah Code Ann. § 30–3–10(1)(a); *Tucker,* 910 P.2d at 1214; *Davis,* 749 P.2d at 648; *Deeben,* 772 P.2d at 975 n. 4. Likewise, trial courts generally should not consider economic disputes between the parties when making their custody and parent time determinations if the disputes have no material bearing on the best interests of the children. *See* Utah Code Ann. § 30–3–10(1)(a); *Tucker,* 910 P.2d at 1214. Rather, economic disputes are best resolved on economic terms, through support or alimony awards, property distribution determinations,[2] attorney fees, and, if necessary, contempt proceedings.[3]

¶ 6 Moreover, in any given case, the reasons for a party's failure to pay court-ordered support may be multi-faceted, and a failure to fully pay does not, per se, indicate that a parent does not have his or her child's best interests at heart. In this case, the trial

court directed Husband to pay half his income as temporary family support while the case proceeded to its final resolution. At that time, Husband was self-employed in a consulting business and was entitled to deduct the business's expenses to determine his income for any given month. The trial court took issue with his deduction of seemingly trivial expenses, as well as with his calculations to the penny. The trial court concluded that Husband's failure to pay "all he possibly could" undermined his love for, and commitment to, his children, as he was "evidently being careful not to 'overpay' for the benefit of the children."

¶ 7 Although Wife contends that we should disregard Husband's arguments because he failed to marshal the evidence in support of the trial court's decision, Husband does not challenge any of the trial court's factual findings. Accordingly, there was no need for Husband to marshal the evidence. Instead, we simply take the findings as our starting point and proceed to consider the trial court's legal conclusion in light of those findings. *See Wardley Better Homes & Gardens v. Cannon,* 2002 UT 99, ¶ 14, 61 P.3d 1009 ("Challenges to a trial court's legal determinations . . . do not require an appellant to marshal the evidence."); *In re Estate of Beesley,* 883 P.2d 1343, 1347, 1349 (Utah 1994) (stating that because appellant "ma[de] no effort to marshal the evidence in support of the . . . findings," the court had to "presume that the evidence supports the findings and proceed to an examination of the trial court's conclusions of law and the application of that law to the case") (citation and internal quotation marks omitted).

¶ 8 We initially note that the trial court's consideration of Husband's accounting practices in its custody determination is problematic for any number of reasons, in addition to the more general concern previously discussed. First, Husband's self-em-

---

**2.** We note that the trial court also used Husband's aggressive accounting practices to help justify its division of vehicles, giving Wife the more valuable car, and its award of partial attorney fees to Wife. Husband does not challenge these measures by which the trial court met the economic impacts of his accounting practices with economic adjustments.

**3.** We do not mean to imply that a court could never consider the failure to pay child support in a custody determination. A court could do so if there was direct evidence that the party's action in this regard actually harmed the children or showed indifference to them.

ployment, coupled with a lack of direction in the order of temporary family support, meant that how Husband's income was to be calculated was pretty much left up in the air. The trial court acknowledged that neither it, nor "accountants, except by way of opinion," could "determin[e] exactly what [Husband's] 'true' income was during the pendency of [the] case." Second, while sensing that Husband did not pay Wife a full half of his income when the temporary support order was in effect, the trial court refused to calculate the amount of any monetary shortfall owed to Wife under the temporary support award. This decision is perplexing given that Husband had offered to make up for any discrepancy if the trial court did not accept his calculations, and necessarily reflects the trial court's own uncertainty about what amount Husband should actually have paid. Third, the type of support the trial court found that Husband had effectively underpaid was temporary *family support*—apparently a combination of alimony and child support—not just child support. Thus, the mixed character of the support further weakens any conclusion that could be drawn about the extent to which Husband's income calculations reflected adversely on his parental aptitude. Fourth, the trial court recognized that "[Husband] paid for some things not set forth by [Wife,]" and we do not know to what extent Husband directly covered the children's expenses during the times they were with him.[4] Fifth, as noted in footnote 2, the trial court redressed the economic implications of Husband's accounting practices through economic adjustments, in both the awards of property and attorney fees. And sixth, notwithstanding the interpersonal conflict inherent in contested divorce proceedings, the trial "court credit[ed Husband with] being very generous at trial in agreeing to certain aspects financially that d[id] not favor him." Thus, we simply do not see any connection between Husband's income calculations during the term of the temporary family support order and his love for his children,

or anything else reflective of his parenting attitudes, abilities, or priorities.

¶ 9 While we agree with Husband on the fundamental irrelevance of his income calculations to the custody decision, we do not agree that this entitles him to reversal. On the contrary, the trial court's findings in this regard, while admittedly wide of the mark, were essentially gratuitous, and its disposition is readily sustainable on the basis of other findings not challenged by Husband. *Cf. DeBry v. Noble*, 889 P.2d 428, 444 (Utah 1995) ("It is well-settled that an appellate court may affirm a trial court's ruling on any proper grounds, even though the trial court relied on some other ground.").

¶ 10 Husband's assertion that the trial court's custody decision was based solely on its finding regarding his accounting practices is simply not accurate. In fact, the trial court specifically indicated that its custody award was also based on other pertinent findings, which we conclude readily support its decision to award Wife seventy percent of the physical custody time. The trial court's most important factual findings supporting the physical custody division were: (1) Wife was the primary caregiver for the children during their marriage, while Husband worked and provided financial support; (2) "[c]onsistency and structure are important for these children" and the parents must agree on and maintain the children's dietary, social, therapeutic, and educational regimes; and (3) Wife was better positioned to maintain that consistency because "she can work from the home on a flexible schedule and accomplish many of the goals set for the children, yet be earning a reasonable income."

¶ 11 We conclude that these three findings fully support the trial court's physical custody disposition. We have previously indicated that certain factors that a trial court considers in its custody determination are "[p]rominent, although not dispositive." *Deeben v. Deeben*, 772 P.2d 972, 973 (Utah Ct.App. 1989). High on this list are "the identity of

---

4. In its June 29, 2004 order, the trial court granted Wife "[s]ole custody of the minor children, on a temporary basis, ... subject to [Husband's] parent time of after school until 8:00 p.m. on Thursday in one week and from Thursday after school through Sunday church the following week, with this pattern alternating thereafter on a weekly basis."

the primary caretaker during the marriage," and "which parent has greater flexibility to provide personal care for the child." *Id.* (quoting *Pusey v. Pusey,* 728 P.2d 117, 120 (Utah 1986)) (internal quotation marks omitted). Again, Wife was the primary caretaker during the parties' marriage, and she will be able to perform many of her appraisal duties [5] from home, "juggl[ing her] schedule" around the children's needs. As Wife will be able to personally care for the children and adjust her work schedule around the children, she is in the best position to provide the most continuity of care—especially important with autistic children needing structure and consistency. Wife's ability to provide personal care will also minimize the need for surrogate care by others who may not, as diligently, follow the dietary, educational, therapeutic, and social regimes that the parties have agreed upon. We emphasize that custody determinations between two loving and fit parents are always very difficult, "frequently ... requir[ing] a choice between good and better," and the trial court must make a decision, in its discretion, based on what is best for the children. *Tucker v. Tucker,* 910 P.2d 1209, 1214 (Utah 1996) (quoting *Hogge v. Hogge,* 649 P.2d 51, 55 (Utah 1982)).

¶ 12 Accordingly, regardless of the trial court's improvident consideration of Husband's accounting practices in its custody determination, we affirm the trial court's custody award.[6] Each party shall bear his or her own costs and attorney fees incurred on appeal.

¶ 13 I CONCUR: JUDITH M. BILLINGS, Judge.

¶ 14 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Presiding Judge.

---

**5.** Before she stopped working to take care of the children, Wife was an appraiser. Following the divorce, she planned to restart her appraisal business.

**6.** Husband also argues that the trial court abused its discretion when it entered Wife's alimony on a graduated scale for the first two years. We

have considered this issue and conclude the trial court did not abuse its discretion because facts in the record support its determination that it might take approximately this much time for Wife to reach her full income potential. We thus affirm the trial court in this regard.